175 So.2d 899 (1965)
B. T. U. INSULATORS, INC., Plaintiff-Appellant,
v.
MARYLAND CASUALTY COMPANY, Inc., Defendant-Appellee.
No. 10385.
Court of Appeal of Louisiana, Second Circuit.
May 21, 1965.
Lewis Weinstein, Shreveport, for plaintiff-appellant.
Cook, Clark, Egan, Yancey & King, Shreveport, for defendant-appellee.
Before GLADNEY, AYRES and BOLIN, JJ.
GLADNEY, Judge.
The issue presented for this appeal is whether or not plaintiff was protected by collision insurance as to its 1962 Ford truck which was damaged in an accident on April 21, 1962. The defendant insurer defends on the ground that the endorsement carrying such coverage was not in effect until May 16, 1962, the date when coverage was requested and made effective. The trial court after hearing the case on its merits held that the endorsement purporting to carry collision liability was not in fact issued until after the loss, and rejected plaintiff's demands.
B.T.U. Insulators, Inc. of which corporation Francis E. Hughens was president and owner, placed their automobile insurance with the insurance agency of Snow, Smith & Moore. Prior to the purchase of the truck herein involved two Ford trucks and an Oldsmobile automobile were covered by an automobile policy with date of April 13, 1961. Only the Oldsmobile was covered with collision insurance. On March 6, 1962 *900 plaintiff acquired a 1962 Ford truck which was added to the insurance policy then in effect and provided only liability insurance coverage for the 1962 Ford.
On the day preceding the anniversary date, April 13, 1962, Shelby Smith, a member of the insurance agency, contacted Hughens and discussed coverage as to each automobile or truck owned by the corporation with respect to changes desired. As to the 1962 Ford truck Smith testified:
"A * * * I asked him at that time or advised him at that time that there was no collision coverage on this new 1962 vehicle, and I knew it was mortgaged, and didn't the bank require the coverage, and I was advisedI also said, `"Do you have some arrangement with them more or less that you don't need to carry the coverage?"' And he said that had been taken care of, and that was all that was discussed. I had the policies at home and I took them back to the office that next day and the policies that were adjusted were adjusted and the others were mailed out.
"Q Did that discussion take place before this accident which occurred on April 21st?
"A Yes. I believe the discussion was had the evening of April 12th. I am not exactly sure of the date, but it was before the accident, yes, sir."
Hughens expressly denied this testimony by Smith and stated he had requested collision insurance. However, he later said there was some doubt in his mind as to whether there was an understanding between himself and Smith as to coverage on the 1962 Ford truck. He testified:
"Q But you deny that you told him specifically that you did not want this coverage?
"A That's right. We had collision as far as I knew on everything except that old almost worthless truck, and that is for obvious reasons we didn't want it on it. There is a possibility that there is some confusion as to 1952 and 1962, between one or the other of us, but it was not my intent in any way. There could have been a misunderstanding either by Mr. Smith or by myself or the other way around as to the statements on that, but it was never my intent to let a $3300.00 truck to go uninsured and certainly not to insure a $150.00 truck, and I was alsothe premiums were approximately the same on a 1957 Ford Station Wagon, very little difference, and it was covered." (Emphasis supplied)
Glover Tisdale, Vice-president of the Shreveport Bank & Trust Company testified that for the purpose of paying for the Ford truck Hughens had negotiated a loan with the bank for the sum of $2,000.00; that the loan was made about April 13 and and he assumed the policy was in his files by May 1st; that when Hughens was in his office, which date he thought was about April 13, a phone call was placed to the firm of Snow, Smith & Moore and Hughens personally discussed the insurance with someone at the insurance firm; and that a request was then made for an endorsement providing for the loss to be payable to Shreveport Bank & Trust Company.
Shelby Smith further testified that collision insurance on the 1962 truck became effective only by an endorsement attached to the particular policy and in fact the endorsement was issued and delivered on May 16, 1962. The drafting and attachment of the endorsement was handled by Miss Ann Evans.
Hughens stated that he personally had delivered the policy to the bank after picking *901 it up at the office of the insurance firm, testifying:
"Q * * * It was after the accident that collision insurance on the 1962 truck was delivered to you, was it not?
"A Yes, sir. I am sure that's right, because the bank had asked me about it.
"Q And at that time you took the collision policy on the 1962 truck and took it over to the bank, to Mr. Tisdale's office?
"A That's right.
"Q And that was the collision insurance policy on this 1962 truck?
"A That was the only policy the bank had ever received, whatever was in it."
The testimony of Miss Evans was as follows:
"Q Do you know when the collision coverage endorsement was first issued on this 1962 Ford truck?
"A The endorsement was issued on May 16, 1962.
"Q How do you know it was issued on that date?
"A I issued it.
"Q What do you have to bring back that date to your mind as being the date it was issued?
"A The Shreveport Bank & Trust called sometime around ten o'clock in the morning on May 16th and I made a notation on the telephone pad to add $100.00 deductible collision to BTU's policy, with the loss payable clause to the Shreveport Bank & Trust, and I had the post office box number of the Shreveport Bank & Trust.
"Q I will show you a piece of paper I mark for the purpose of identification as defendant's exhibit D-1-A, and I ask you if you recognize that?
"A Yes, sir. That is my writing and that is the call I took when someone from the bank called.
"Q Do you know who called?
"A No, sir, I do not. I don't remember.
"Q It was a call from the bank?
"A From the Shreveport Bank & Trust.

* * * * * *
"Q Did you, in fact, after receipt of this request on May 16th, 1962, prepare an endorsement to provide collision coverage on this truck?
"A Yes, sir, I did.
"Q What did you do with the endorsement that you prepared? What did you do with it after you prepared it?
"A I put it in my basket, on my desk, where we put all of our letters or endorsements that we issue during the day, and Shelby came into the office and picked it up and signed it.
"Q That is Shelby Smith?
"A Yes, sir, Shelby Smith.
"Q Do you know what he did with it when he signed it?
"A Mr. Hughens came in the office shortly after Shelby did, to discuss something with him, and Shelby signed it and handed it over to Mr. Hughens.
"Q That was the same day it was issued?
"A Yes, sir, the same day it was issued."
*902 In preparing the endorsement Miss Evans gave it the same date as the anniversary date of the policy. The controversy between the parties perhaps may be traced to this fact. We surmise the proper thing for Miss Evans to have done would have been to disclose on the endorsement the date of its issuance. To further complicate the situation when the insurance company ultimately cancelled plaintiff's insurance the premium refunded was predicated on insurance from April 13, 1962 rather than from May 16, 1962. However, this would simply constitute an error entitling plaintiff to a refund premium adjusted to the proper date.
In view of the endorsement antedating the date of the loss, the fact which is in dispute, the burden of proof must rest upon the insurer. In accordance with general rules which relate to burden of proof in other civil actions on contracts, the burden in an action on an insurance contract is on plaintiff to establish every fact in issue which is essential to his cause of action or right of recovery, including existence of policy sued on, its terms and provisions, and that his claim is within its coverage. Boyd v. White, La.App., 123 So.2d 835 (2nd Cir. 1960 Cert, denied). However, when the insurer seeks to limit or relieve its liability under a policy in existence, the burden of establishing the essential facts rests upon the insurer. Taylor v. Unity Industrial Insurance Company, La.App., 147 So. 91 (2nd Cir. 1933); Ellzey v. Hardware Mutual Insurance Company of Minnesota, La.App., 40 So.2d 24 (1st Cir. 1949); Paz v. Implement Dealers Mutual Insurance Company, La.App., 89 So.2d 514 (Orl. Cir. 1956); LSA-C.C. Arts. 1797, 1978, 1819.
It would seem to be too clear to admit of argument that an insurance agent has no authority to contract for liability on behalf of the principal by incurring liability for a loss which has already been incurred. In Arguimbau v. Germania Insurance Company, 106 La. 139, 30 So. 148 (1901) it was held that the secretary of an insurance company cannot bind the company for a loss which has occurred but for which the company is not otherwise liable. The author of the opinion stated:
"To hold otherwise would be to hold that the money of an insurance company is at the disposal of the secretary, to be disbursed as he pleases, and without regard to whether claims presented are just or unjust." [Arguimbau v. Germania Insurance Company, 106 La. 139, 30 So. 148, (1901)]
After carefully reviewing the evidence we agree with the trial court that the endorsement was not issued until after the accident and there is no manifest error in the judgment presented on appeal.
It follows from the reasons hereinabove stated that the judgment from which appealed is affirmed at appellant's cost.