396 So.2d 1379 (1981)
Tom R. SHELTON, Plaintiff-Appellant,
v.
COMMERCIAL UNION ASSURANCE COMPANY, Defendant-Appellee.
No. 14503.
Court of Appeal of Louisiana, Second Circuit.
March 23, 1981.
*1380 John S. C. Massey by David G. Haynes, West Monroe, for plaintiff-appellant.
Theus, Grisham, Davis & Leigh by Brian E. Crawford, Monroe, for defendant-appellee.
Before PRICE, HALL and JASPER E. JONES, JJ.
JASPER E. JONES, Judge.
Plaintiff, Tom Shelton, appeals a summary judgment which rejected his demands against his liability insurer, Commercial Union Assurance Company, for sums he was required to pay in excess of his policy limits to settle a liability claim against him resulting from an automobile accident caused by the negligence of his minor daughter. We affirm.
In this accident which occurred September 21, 1976, a Mrs. Norman sustained personal injuries. Shelton reported the accident on September 23, 1976 to his agent who wrote his liability policy containing limits of $50,000 for injuries to one person, and $100,000 for all personal injury claims resulting from any accident. At the time Shelton reported the accident he requested his agent to increase the limits of his liability coverage to provide him with $100,000 for the injury of any one person, and $300,000 for any injury resulting from any one accident. The agent advised Shelton that the request for the increase in coverage would have to be approved by the defendant. In October the increase was approved by the insurer and a policy endorsement reflecting coverage of $100,000/$300,000 was issued by the insurer. The endorsement reflected that the coverage as increased was effective as of September 19, 1976, which was the anniversary date of the original policy.
Mrs. Norman was hospitalized immediately following the accident and remained in the hospital for approximately six days. She was contacted by the defendant's claims adjuster on September 28, and at this time she advised the adjuster that she was unconscious for a short period of time following the accident, and that she sustained back and neck injuries and bruises to her leg in the accident. On October 5 defendant's adjuster sent medical authorization forms to Mrs. Norman preparatory to contacting Mrs. Norman's physicians for the purpose of obtaining medical information concerning the nature and extent of Mrs. Norman's injuries. Mrs. Norman never returned the signed forms authorizing defendant's agent to contact her physicians for medical information concerning her condition.
On October 12 defendant received a letter from an attorney advising it that he represented Mrs. Norman in her claim for personal injuries. Following this notification defendant's adjuster made numerous calls *1381 to Mrs. Norman's attorney seeking medical reports for the purpose of evaluating the claims. On January 6, 1977 defendant's adjuster received the first medical report on Mrs. Norman and it was from a chiropractor who had been treating her. On February 8 the insurer received a report from Dr. King, an orthopedic surgeon from Shreveport, stating that Mrs. Norman was suffering from cervical and lumbar contusions and ligamentous strains. In March and April the insurer received supplemental reports from Dr. King reflecting that Mrs. Norman continued to complain of back and neck discomfort.
On June 24, 1977 the insurer received an offer of compromise settlement from Mrs. Norman's attorney in the amount of $20,000. July 25 the insurer offered Mrs. Norman's attorney the sum of $4,000 to settle her claim.
On August 19 Mrs. Norman changed attorneys, and the insurer received a letter from Mrs. Norman's second attorney advising it of his representation. On September 7 Mrs. Norman's attorney advised the insurer that Mrs. Norman was going to be hospitalized for treatment of her injuries, and under these circumstances it would be impossible to negotiate a settlement before prescription of the claim which would occur on September 21, and therefore, suit would be promptly instituted but that the insurer need not file an answer to the suit until compromise negotiations could be exhausted. Mrs. Norman's attorney instituted suit on September 15 for approximately $225,000. In early September Mrs. Norman's medical condition seriously deteriorated, and the insurer received reports from a neurologist and from Dr. King that Mrs. Norman was suffering from carpal tunnel syndrome. The insurer also received a report on September 12 from a psychiatrist that Mrs. Norman was suffering from a depression neurosis.
Mrs. Norman underwent surgery for carpal tunnel syndrome on her right wrist in October, 1977, and on her left wrist in February, 1978. The insurer's adjuster contacted Mrs. Norman's attorney in January, February, and March, 1978 seeking to enter into settlement negotiations, but on each of these occasions was advised by Mrs. Norman's attorney that he did not desire at that time to discuss settlement.
On June 28 Mrs. Norman's attorney amended his suit substantially increasing his demands against Shelton and his insurer, and added Shelton's uninsured motorist carrier as a party defendant. On June 30 the insurer's adjuster received from Mrs. Norman's attorney a courtesy copy of the amended petition and an offer of settlement for $250,000. This was the first settlement offer that the insurer had received from Mrs. Norman's second attorney. Following the receipt of this settlement offer and the copy of the amended petition, the insurer on July 6 wrote Shelton a letter and advised him that claimant's demands exceeded his coverage and that he alone would be liable for any judgment rendered in excess of the policy limits of $50,000/$100,000, and that it was referring the suit to the insurer's attorney for defense. Shelton was further advised that if he wished he could retain his own attorney to represent him on that portion of the claims in excess of the policy limits.
Shelton employed his own attorney and in settlement negotiations which followed, Shelton's attorney, the insurer's attorney, Mrs. Norman's attorney, and the uninsured motorist carrier's representative settled the case before trial. The settlement was concluded on June 22, 1979 for $71,763.25. The insurer paid $49,263.25 because it had earlier paid on medical bills submitted by Mrs. Norman the difference between this amount and the $50,000 coverage. The uninsured motorist carrier paid $10,000, and Shelton paid $12,500. After this settlement was concluded Shelton instituted this action seeking to recover the $12,500 contributed by him to the settlement.
Shelton contends that the October 3, 1976 endorsement to his liability policy increasing his coverage for any one injury from $50,000 to $100,000 which reflected on its face that the effective date of change was September 19, 1976, effectively provided him with liability coverage for the September 21, 1976 accident in the amount of *1382 $100,000 for the injury sustained by Mrs. Norman. He asserts that because this coverage was more than adequate to cover the amount for which the claim was settled, he should not have been required to make the $12,500 contribution to the settlement, and for this reason he should be reimbursed for this sum by his insurer.
Shelton contends in his suit that the insurer should have accepted the June 24, 1977 $20,000 settlement offer received by it from Mrs. Norman's attorney, and that it was not in good faith when it refused to compromise the claim on this basis. Shelton further contends that the insurer was in bad faith because it failed to advise him of the $20,000 settlement offer and for its failure prior to July 6, 1978 to advise him of the possibility of a claim in excess of his policy limits. Shelton alternatively contends that even if he had only $50,000 coverage that because of the insurer's bad faith in handling the claim it became liable to him for the claims of Mrs. Norman in excess of his policy limit.
Defendant filed a motion for a summary judgment attaching to it depositions from the insurer's adjuster, Henry Norris, and appellant, Tom Shelton, and an affidavit from the insurer's agent and a certified copy of the policy.
The trial court stated in its written reasons for judgment that both counsel agreed that there were no issues of material fact. The facts surrounding the claims set forth by us were obtained from the exhibits attached to the motion for summary judgment. The trial court found that appellant only had $50,000/$100,000 coverage in effect on the date of the accident, and that this coverage was not increased by the endorsement to the policy increasing coverage based upon the request for the increase made by Shelton subsequent to the date of the accident. The trial court found that the insurer was not in bad faith when it rejected Mrs. Norman's $20,000 compromise offer on June 24, 1977 because "at the time no one considered plaintiff's injuries as significant." The trial court noted that after Mrs. Norman's medical picture deteriorated, the insurer never had an opportunity to settle the case within the policy limits, even though it had diligently sought to negotiate a settlement with Mrs. Norman's second attorney. The court then concluded that while the insurer should have kept Shelton advised of Mrs. Norman's deteriorating condition, that because there was no opportunity to settle within the policy limits following the change of the medical posture of the case, that defendant was not arbitrary in its actions and was in good faith.
Appellant assigns as error the trial court's failure to find that the insurance policy provided him with coverage in the amount of $100,000 on Mrs. Norman's claim, and alternatively that the trial court erred in failing to find the insurer liable for Mrs. Norman's claim in excess of the $50,000 coverage because of the insurer's bad faith in the following respects:
A. Failure of insurer to accept Mrs. Norman's $20,000 offer to settle;
B. Insurer's failure to advise appellant of the $20,000 offer: and
C. Insurer's failure prior to July 1978 to advise appellant that the value of Mrs. Norman's claims might exceed the $50,000 coverage.

IS APPELLANT'S INCREASE IN LIABILITY COVERAGE APPLICABLE TO CLAIMS RESULTING FROM THE SEPTEMBER 21, 1976 ACCIDENT?
In the decision of B. T. U. Insulators, Inc. v. Maryland Casualty Co., 175 So.2d 899 (La.App.2d Cir. 1965), it was held that an endorsement to a policy which provided collision coverage on a 1962 Ford truck which was both requested by the insured from the agent and issued by the agent subsequent to an accident where the truck was damaged, provided no coverage for the damage, even though the endorsement reflected an effective date prior to the accident. In that case the court stated:
"It would seem to be too clear to admit of argument that an insurance agent has no authority to contract for liability on behalf of the principal by incurring liability for a loss which has already been incurred." Id. at 902.
*1383 Appellant acknowledges in his deposition that he had only $50,000/$100,000 coverage at the time of the accident, and that he did not seek to have the increase in coverage that he requested at the time he reported the accident backdated to cover the accident which he was reporting.
The affidavit of the agent establishes that the request for the increase was made after the accident and appellant was then advised that the increase would have to be approved by the company and that this approval was granted on October 3, 1976. This agent states he then caused the endorsement reflecting the coverage increase to be issued. This endorsement reflected the date of its issuance (10/03/76) provided for coverage of $100,000/$300,000 and states "Policy Change Effective 09/19/76". This was the anniversary day of the policy providing the $50,000/$100,000 coverage. Even though the effective date shown upon the endorsement was two days before the date of the accident on September 21, 1976, we conclude as did the court in B. T. U. v. Maryland, supra, that the agent issuing this endorsement could not create liability for the insurance company for a loss that occurred prior to the request for the increase and the issuance of the endorsement increasing the coverage. The trial court was correct in concluding that the appellant's increase in coverage was not available to satisfy claims resulting from the September 21, 1976 accident.

DID THE INSURER SHOW AN ABSENCE OF GOOD FAITH IN THE MANNER IN WHICH IT ATTEMPTED TO RESOLVE APPELLANT'S LIABILITY CLAIM AND THEREFORE BECOME RESPONSIBLE TO HIM FOR THE AMOUNT PAID BY HIM IN EXCESS OF THE INSURANCE COVERAGE?
An insurer is not required to settle a claim within policy limits under penalty of absolute liability for any excess judgment rendered against the insured. Nevertheless, an insurer may be liable for an excess judgment against its insured where the insurer's refusal to settle within policy limits is found to be arbitrary or in bad faith. Cousins v. State Farm Mutual Automobile Ins. Co., 294 So.2d 272 (La.App.1st Cir. 1974), and authorities cited therein. In Cousins the court listed the criteria to evaluate whether an insurer is in bad faith for failure to compromise a claim within policy limits:
"(1) The probability of the insured's liability; (2) the adequacy of the insurer's investigation of the claim; (3) the extent of damages recoverable in excess of policy coverage; (4) rejection of offers in settlement after trial; (5) the extent of the insured's exposure as compared to that of the insurer, and (6) the nondisclosure of relevant factors by the insured or insurer." Id. at 275.
Appellant contends that the insurer was not in good faith when it failed to accept the $20,000 compromise offer made by Mrs. Norman on June 24, 1977. At the time this settlement offer was extended the only medical reports which the insurer had been given by Mrs. Norman's attorney reflected that she had ligamentous strains in her neck and back. There was no indication in these medical reports that she had any disc pathology, bone injury, or other permanent injuries to the neck and back. She had been hospitalized for only six days following the accident, and plaintiff here does not contend in brief that there was ny indication that Mrs. Norman as of the date of this settlement offer had any other medical problems. While these personal injuries certainly are of some significance as was recognized by the insurer's adjuster who extended a counter-offer of $4,000 to settle the claim, they are not severe enough to justify a settlement of $20,000. The insurer made a conscientious effort to resolve the claim by making a counter-offer which reflected a far more realistic evaluation of Mrs. Norman's claim as it then existed than did Mrs. Norman's settlement demand.
In Champion v. Farm Bur. Ins. Co., 352 So.2d 737 (La.App.3d Cir. 1977), the court stated:
"... the liability of an insurer for refusing to accept an offer of settlement is not predicated upon its failure to predict *1384 the correct outcome of the action it is defending, but rather whether it unreasonably exposes its insured to a judgment in excess of the policy limits, and whether the proposed settlements are rejected conscientiously in terms of deliberate judgment evaluation rather than for inadequate or no reason." Id. at 740.
The refusal of defendant to pay the excessive amount demanded for settlement of the claim based upon the medical picture as it existed on June 24, 1977 was not unreasonable and does not reflect bad faith on its part.
Appellant contends that the insurer was in bad faith because it failed to advise appellant that it had received an offer from Mrs. Norman to settle the claim for $20,000. Appellant relies upon the decision of Roberie v. Southern Farm Bureau Casualty Ins. Co., 250 La. 105, 194 So.2d 713 (1967). In this case the insured had a liability policy providing $10,000 coverage for any one injury or death, and $20,000 coverage for any one accident. One person was killed in the accident and several were injured, and the death action appeared to have a value in excess of $10,000. The insurer apparently felt that the value of the total of the other claims might be less than $10,000. The insurer received an offer to settle all claims for $20,000 and failed to transmit it to the insured. The insurer rejected the settlement offer and after a trial there was a total judgment in favor of all claimants in the amount of $28,000; $20,000 against the insurance company and the insured, and $8,000 against the insured only for that portion of the judgment in excess of the policy limits. The supreme court there stated that while the insurance company was not in bad faith in rejecting the compromise offer and litigating the claims, that the insurer was guilty of bad faith in failing to advise the insured of the compromise offer of settlement. In holding the insurer guilty of bad faith the court stated:
"However, the insured, Roberie, was kept in the dark; he was never apprised of the offers of compromise nor warned of his potential liability; he was ignored. He needed information and advice on the point of his potential liability, which he was not given by his representative, his insurer. A conflict of interest arose between the insurer and the insured. The insurer failed to discharge its duty towards its insured, thereby precluding any decisive action on his part. We find that the actions of Southern Farm Bureau Casualty Insurance Company towards Roberie were more than negligent; they were in bad faith and in utter disregard of Roberie's natural desire to protect himself from financial loss." Id. 250 La. 105, 194 So.2d at 716.
The Roberie court at the outset of its discussion of the liability of the insurer, stated:
"A determination as to what constitutes bad faith or lack of good faith depends on the facts and circumstances of each case." Id. at 716.
There is a vast difference between the facts of Roberie and these presented here. In Roberie the death claim was clearly worth in excess of the $10,000 policy limits and all the claimants were offering to settle the total claim for $20,000, which was also within the policy limits for one accident. Though the opinion does not particularize the details of the claims asserted other than the death action, the circumstances strongly indicate that the total value of these other claims had a settlement value of less than $10,000, and that the difference in the value of the other claims and the $10,000 coverage available to apply to them in the $20,000 settlement demand was construed to be excess settlement demand on the death claim above the $10,000 available to it. If the insured had known of the settlement offer, he might well have taken some action with regard to that portion of the demand which was in reality a demand for damages for the death claim above the insurance coverage available to pay for the claim. The court in the opinion appears to recognize that if the insured had known of the settlement offer he might have made a personal contribution to it to have protected himself from greater loss.
In this case even if the insurer had immediately advised the appellant of the settlement *1385 offer, appellant would have taken no action with regard to it because it was an excessive demand and appellant at this point still had a $30,000 cushion in his coverage above the settlement demand. He could not have justified paying any portion of the demand from his own funds as Roberie could have done had he been aware of the settlement offer. By the time the medical picture on Mrs. Norman had deteriorated to the extent that acceptance of the within policy limit settlement offer would have been justified, her second attorney had by letter of September 7 advised that he could not negotiate a settlement at that time because his client was being hospitalized and that he planned to institute suit to interrupt prescription. He filed suit on September 15 demanding $225,000. The first report received by the insurer indicating that Mrs. Norman had a carpal tunnel syndrome was on September 9 and the first report received indicating she had a depression neurosis was received on September 12.
The insurer showed good faith by making a conscientious effort to settle the claim by attempting to open settlement negotiations with plaintiff's second attorney as soon as the medical picture reflected that Mrs. Norman had serious health problems other than soft tissue injury to the neck and back. The adjuster unsuccessfully attempted to initiate settlement negotiations in January, February, and March, 1978.
Appellant further contends that the insurer showed an absence of good faith by failing to communicate to him the various medical information received by the insurer which evidenced that Mrs. Norman's physical condition was deteriorating and that there was a possibility of a claim against appellant which would exceed his policy limits. The first settlement offer received by the insurer from Mrs. Norman's second attorney, other than the demand contained in the initial suit filed September 15, 1977,[1] was a $250,000 settlement demand made June 30, 1978. Following this settlement demand, which was the first indication to the insurer that the claim could not be resolved within the policy limits, the insurer referred the suit to its attorney for defense, advised appellant on July 6 of the possibility of an excess claim, and that he could secure a lawyer if he saw fit to defend the claim against him in excess of his policy limits. Appellant then immediately secured his own attorney, and almost a year later the case was settled out of court. Appellant was in no way prejudiced by virtue of the fact that he was unaware that the $20,000 settlement offer had been earlier made, nor was he prejudiced by failing to receive the medical reports on Mrs. Norman's condition that were rendered in the latter part of 1977 and the early part of 1978, reflecting her deteriorating medical condition.
These circumstances distinguish this case from the Roberie, supra, case.
The court in Cousins, supra, quoting from Younger v. Lumbermen's Mutual Casualty Company, La.App., 174 So.2d 672, set forth the issue here presented as follows:
"The question is always: `Did the insurer exercise that degree of skill, judgment, and consideration for the welfare of the insured which it, as a skilled professional defender of lawsuits having sole charge of the investigation, settlement, and trial of the suit may have been expected to utilize?'" Id. at 275-276.
The insurer here immediately contacted Mrs. Norman following the accident, sought medical authorization which Mrs. Norman failed to give, indicated an interest in settlement with Mrs. Norman's first and second attorneys by making numerous contacts with them seeking settlement offers, properly rejected an excessive demand in settlement which was for a sum less than policy limits, immediately advised the insured upon receipt of Mrs. Norman's settlement demand in excess of the policy limits of the possibility of a claim in excess of policy limits and suggested to him that he consider securing his own attorney. This advice and information was given to the *1386 insured at a time when he had ample time to secure an attorney of his choice to advise and protect his interest. We find no improper conduct on the part of the insurer in the manner it handled this claim. There is no evidence of an absence of good faith.
Judgment is AFFIRMED.
NOTES
[1] This suit named appellant as a party defendant along with his insurer, and was served upon appellant, thereby giving him full knowledge of that demand in excess of his policy limits.