936 So.2d 272 (2006)
Audrey D. BRIGNAC, Plaintiff-Appellee,
v.
CITY OF MONROE, Louisiana Civic Center, The City of Monroe, TIG Insurance Company, The Louisiana Travel Promotion Association and Trinity Universal Insurance Company, Defendants.
No. 41,207-CA.
Court of Appeal of Louisiana, Second Circuit.
July 26, 2006.
Jeansonne & Remondet by Lisa C. McCowen, Donovan Jay O'Pry, II, Lafayette, *273 for Appellant, TIG Insurance Company.
Ted P. Sorrells, APLC, Cyd Sheree Page, Monroe, Nanci Stafford Summersgill, for Appellant, City of Monroe and City of Monore Louisiana Civic Center.
Musa Rahman, Baton Rouge, for Appellee, Louisiana Workers' Compensation Corp.
Allen Roy Ingram, E. Gregory Voorhies, Lafayette, for Appellee, Audrey D. Brignac.
Adams, Hoefer, Holwadel & Eldridge, by Shannon-Howard Eldridge, New Orleans, for Appellee, Trinity Universal Insurance Company of Kansas, Inc.
Nelson, Zentner, Sartor & Snellings, L.L.C. by David H. Nelson, Monroe, for Appellee, Louisiana Travel Promotion Association.
Before CARAWAY, PEATROSS & LOLLEY, JJ.
PEATROSS, J.
This suit arises from an injury sustained by Audrey Brignac, who slipped and fell during a summit being held by the Louisiana Travel Promotion Association ("LTPA") at the Monroe, Louisiana Civic Center. As a result of her accident and injury, Ms. Brignac sued the City of Monroe ("the City"), the Monroe Civic Center ("the Civic Center"), the LTPA and their various insurers, including TIG Insurance Company ("TIG"). During the litigation, multiple motions for summary judgment were filed and argument heard on each. The trial court ultimately granted a motion for summary judgment in favor of Trinity Universal Insurance Company of Kansas ("Trinity") and denied the one filed by the LTPA.[1] Following the trial judge's ruling, TIG, the City and the Civic Center all filed devolutive appeals. For the reasons set forth herein, we affirm.

FACTS
On January 23, 2002, Ms. Brignac was injured when she slipped and fell at the Civic Center, while attending the LTPA Summit being held there. She was taken by ambulance from the Civic Center and thereafter hospitalized for the injuries she sustained from her fall. As previously stated, Ms. Brignac filed suit against the City, the Civic Center, the LTPA and their various insurers.
Trinity was the general insurer for the LTPA. Following Ms. Brignac's accident, Joyce Tiller, the office manager for the LTPA, telephoned Angela Burley at Garrett & Garrett Insurance Agency (the LTPA's insurer) with a request for an additional insured endorsement to provide insurance coverage for the Civic Center. Notably, Ms. Tiller made no mention of her knowledge that Ms. Brignac had suffered an injury on the Civic Center's premises during the LTPA Summit. Ms. Burley forwarded the request on to Trinity's agent, Insurance Associates, which charged a premium for two days by "backdating" the additional insured endorsement issued by Trinity and adding the Civic Center as an insured under the Trinity policy with an effective date of January 21, 2002, two days prior to Ms. Brignac's slip and fall (although this contract was actually signed on January 24, 2002).
During the litigation, the LTPA filed a Motion for Summary Judgment claiming, inter alia, that the written contract lease of the Civic Center was not signed and, therefore, ineffective at the time Ms. Brignac's injury occurred. Oppositions to the motion for summary judgment were filed, *274 which claimed that an oral contract had been reached or, in the alternative, that witness testimony reflected that the contract had, in fact, been signed (in spite of the typed date of January 24, 2002, which was in the contract).
Similarly, Trinity filed a Motion for Summary Judgment denying coverage, defense and indemnity to the City or the Civic Center and claimed that any request made for Trinity to retroactively cover the Civic Center after this accident occurred was improper because the endorsement to the policy was not intended to include a known loss.
The Civic Center and its insurer, TIG Insurance Company ("TIG"), opposed Trinity's motion for summary judgment asserting that the "known loss" doctrine[2] was inapplicable in Louisiana and that Trinity had failed to meet its burden of proof, as required under La. R.S. 22:619.
Argument was heard on the motions for summary judgment on August 8, 2005. On September 27, 2005, the trial court granted Trinity's Motion for Summary Judgment, assigning written reasons. Further, the trial court denied the LTPA's Motion for Summary Judgment as it related to the contract with the Civic Center. In denying the latter motion, the trial court ruled that, regardless of whether or not it could be shown that a written contract was in existence at the time the actual summit was held, the LTPA, the City and the Civic Center had a valid contract for the summit to be held.
On October 6, 2005, Trinity submitted a proposed judgment. The next day, TIG objected to the form of said judgment. On October 19, 2005, TIG filed a Notice of Intent to file Supervisory Writs to this court with regards to the trial court's aforementioned September 27, 2005 ruling and filed a Motion to Stay the trial proceedings. The next day, the trial judge signed Amended and Supplemental Reasons for Judgment. In its Amended Reasons, the trial court stated:
. . . the Court finds there was no insurance coverage for the City of Monroe/Monroe Civic Center provided by Trinity with regard to this accident. Apparently, there was backdated coverage for a higher premium for the LTPA's Summit, but since the plaintiff's accident was a known loss at the time coverage was requested, that accident cannot be covered as it falls outside of what the insurance policy was intended to cover. . . . As a corollary, the Court finds that Trinity has no obligation or duty of defense or indemnification with respect to the City of Monroe/Monroe Civic Center arising from Ms. Brignac's claim.
Exactly one month after signing the Amended Reasons, a partial summary judgment in favor of Trinity was signed and the motion to stay was granted with a return date on the writs set for December 28, 2005. This court denied the supervisory writs on December 22, 2005, stating that the trial court's ruling in favor of Trinity was final. Thereafter, TIG, the City and the Civic Center all filed devolutive appeals seeking reversal of the trial court's finding of a "known loss" and its ruling regarding no duty by Trinity to defend or indemnify the Civic Center under the insurance policy.

DISCUSSION

Issue Number One (verbatim): Whether the trial court's use of the common law doctrine of known loss, rather than La. R.S. 22:619 as the primary source of law, to grant summary judgment in favor of Trinity and against the Monroe Civic *275 Center constitutes legal error?[3]

Issue Number Two (Verbatim): Whether Trinity failed to prove beyond a reasonable doubt that Joyce Tiller harbored an intent to deceive the insurance company at the time she orally requested a certificate of coverage for the Monroe Civic Center, when Ms. Tiller thought Ms. Brignac's accident would be covered by workers compensation and no Trinity representative asked her about any accident or known loss?[4]
The standard of review for the grant or denial of a motion for summary judgment is de novo. See, Jones v. Estate of Santiago, 03-1424 (La.4/14/04), 870 So.2d 1002. Appellate courts review summary judgments de novo under the same criteria that govern a trial court's consideration of whether or not a summary judgment is appropriate, i.e. (1) whether there exists a genuine issue of material fact; and (2) whether or not the mover is entitled to judgment as a matter of law. Ocean Energy, Inc. v. Plaquemines Parish Gov't, 04-0066 (La.7/6/04), 880 So.2d 1. A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P art. 966(B). The moving party must show that reasonable minds would inevitably conclude that judgment is warranted as a matter of law on the facts before this court. Emilien v. U.R. Const., 02-0278 (La.App. 4th Cir.10/30/02), 832 So.2d 345.
TIG initially argues that the grant of Trinity's Motion for Summary Judgment finding no insurance coverage for the Civic Center was in error. It states that, in many common law jurisdictions, the "known loss" doctrine applies if the insured knew or reasonably should have known that there was a substantial probability of loss before the policy period began. TIG points to Korossy v. Sunrise Homes, Inc., 94-473 (La.App. 5th Cir.3/15/95), 653 So.2d 1215, writs denied, 95-1536, 95-1522 (La.9/29/95), 660 So.2d 878, in which the appellate court refused to apply the "known loss" doctrine due to its inability to find any Louisiana cases in which it had been applied. See also, Estate of Patout v. City of New Iberia, 02-278 (La.App. 3d Cir.12/27/02), 849 So.2d 535, writs denied, 03-1098, 03-1099 (La.6/27/03), 847 So.2d 1270. It further states that the application of the "known loss" doctrine by the trial court in the case sub judice "effectively minimiz[ed] the burden of proof required by an insurer which is only to confirm mere knowledge by an insured of a substantial probability of a loss before the policy period began."
TIG argues, alternatively, that La. R.S. 22:619 is instructive in this matter. La. R.S. 22:619 states:
A. Except as provided in Subsection B of this Section and R.S. 22:692, and R.S. 22:692.1, no oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or void the contract or prevent it attaching, unless the misrepresentation or warranty is made with the intent to deceive.

*276 B. In any application for life or health and accident insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. The falsity of any such statement shall not bar the right to recovery under the contract unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer.
From this, TIG points to Dye v. Walker, 36,482 (La.App.2d Cir.10/23/02), 830 So.2d 429, writ denied, 02-2868 (La.1/31/03), 836 So.2d 72, in which this court stated that, under La. R.S. 22:619, an insurer must prove that: (1) the insured made a false statement; (2) the false statement was material; and (3) it was made with intent to deceive. It further cites Irving v. USF & G, Co., 606 So.2d 1365 (La.App. 2d Cir. 1992), citing Morgan v. Golden Rule Ins. Co., 568 So.2d 184 (La.App. 2d Cir.1990), which held that, to rescind an insurance policy as a result of misrepresentation, the insurer must prove that a material misrepresentation was made with intent to deceive. TIG argues, in turn, that, while Ms. Tiller knew of Ms. Brignac's accident and injury, there exists no evidence that Ms. Tiller harbored an "intent to deceive" the insurer at the time she requested the additional insured endorsement. Moreover, it states that Trinity offered no evidence of one of its representatives asking Ms. Tiller about the existence of any accident or known loss.
In summation, TIG argues that the "mere neglect" of Ms. Tiller to advise of her knowledge of Ms. Brignac's accident and injury when she was not asked specifically about it did not equate to a misrepresentation or an intent to deceive in this case.
Trinity further responds by stating that the trial court properly granted its motion for summary judgment, finding no coverage for the City or the Civic Center because the accident and injury occurred prior to a request being made for insurance coverage.
Trinity states that there is no dispute that the call was made to add the Civic Center to LTPA's policy with Trinity after Ms. Brignac had fallen and become injured. It states that representatives of the City, the Civic Center and LTPA knew of Ms. Brignac's fall well before a call was made to Trinity to add the Civic Center to the LTPA's policy. Trinity cites RLI Ins. Co. v. Maxxon Southwest, Inc., 108 Fed. Appx. 194, 2004 WL 1941757 (5th Cir. 2004), which stated that the purpose of insurance is to protect insureds against unknown, or fortuitous risks; fortuity is an inherent requirement of all risk insurance policies. Similarly, in B.T.U. Insulators, Inc. v. Maryland Cas. Co., 175 So.2d 899 (La.App. 2d Cir.1965), this court held that an insurance agent has no authority to contract for liability on behalf of the principal by incurring liability for a loss which has already been incurred. See also, Shelton v. Commercial Union Assur. Co., 396 So.2d 1379 (La.App. 2d Cir. 1981). It notes that, in both cases (and like the case sub judice), an accident occurred after which an application for insurance coverage was made; and, in both, the court ruled that an insurance company cannot/will not insure a liability which has already occurred. Trinity states that TIG is attempting to avoid the reality that insurance covers only the possibility of future, uncertain loss rather than a loss that the insureds already knew had occurred.
Trinity further argues that TIG and the City's argument that Louisiana does not accept the "known loss" doctrine is misplaced and nothing more than an attempt *277 to "confuse this court." It argues that neither Korossy, supra, nor Estate of Patout, supra, stands for the proposition that an actual, known loss or known injury predating an insurer's policy issuance is covered. Trinity cites Broome v. State Farm Mut. Auto. Ins. Co., 152 So.2d 827 (La.App. 4th Cir.1963), in which an attempt was made to collect on collision insurance on an automobile which had been destroyed prior to a contract of insurance being effectuated. In Broome, the court stated, "[i]t is contrary to common sense, and sound business for an insurer to knowingly agree to assume a fixed . . . liability." Trinity buttresses this with the language of Schexnaider v. Rome, 485 So.2d 245 (La.App. 3d Cir.1986), which held that no insurance company would have issued a policy covering an accident which had occurred prior to his making an application for insurance.
Similarly, Trinity argues that TIG's reliance on Irving, supra, is "ineffective to support its position." It states that, unlike the insured in Irving, Ms. Tiller was aware of Ms. Brignac  the injured's  accident prior to requesting insurance coverage and intentionally withheld that information when making said request.
Trinity further contends that Louisiana courts do not need to resort to La. R.S. 22:619 to resolve such a conflict, as "such losses are inherently uninsurable." Instead, it argues that La. R.S. 22:619 addresses a different circumstance  coverage of an insurable risk when insurance is in place, but that insurance is subsequently deemed voidable.
In summation, Trinity contends that no insurance company would have issued a policy covering an accident which had occurred prior to making an application for insurance. It argues that this is the generally accepted principle guiding courts in insurance cases and should apply here. We agree.
The record in the case sub judice reflects that the trial judge was correct by ruling in favor of Trinity's Motion for Summary Judgment and finding no duty of defense or indemnity due by Trinity. We first note that the jurisprudence is well-settled that the purpose of insurance is to protect insureds against unknown, fortuitous risks, and, moreover, that the purpose of insurance policies is not to insure liability incurred prior to being named in a policy. See, RLI Ins. Co., supra; Schexnaider, supra; Broome, supra.
We find B.T.U Insulators, Inc., supra, and Shelton, supra, are instructive here. In both cases, this court was presented with similar facts to those in the case at bar, i.e.  a loss that pre-dated an application for insurance and a fee collected by the insurer. In each respective case, this court held that an insurer cannot be bound for a cause which is uninsurable. In B.T.U. Insulators, supra, this court held that an endorsement to a policy providing collision coverage on a 1962 Ford truck, which was both requested and issued after said truck was damaged in an accident, provided no coverage even though the endorsement provided an effective date prior to the accident. We stated:
. . . [A]n insurance agent has no authority to contract for liability on behalf of the principal by incurring liability for a loss which has already been incurred.
In Shelton, supra, this court reaffirmed the aforementioned analysis from B.T.U Insulators, supra. The record before this court is replete with evidence that officials from the LTPA, the City and the Civic Center were aware of Ms. Brignac's accident prior to seeking coverage from Trinity.
We further find TIG's reliance on Korossy, supra, and Estate of Patout, supra, to *278 be misplaced.[5] While Louisiana does not apply the "known loss" doctrine per se, the holding in each of the respective (aforementioned) cases is not meant to stand for the proposition that an actual, known loss predating an insurance policy is somehow covered. Quite the contrary. As succinctly stated in Schexnaider, supra, no insurance company would have issued a policy covering an accident which had occurred prior to his applying for insurance. Such a loss is uninsurable. Anything otherwise is contrary to the fundamentals of Louisiana law and, more so, to the fundamentals of sound business practice or even common sense.[6] As a result, in Korossy, supra, and Estate of Patout, supra, the coverage was voided  as we find that it is in the case sub judice.
Similarly, we find TIG's interpretation of La. R.S. 22:619 to be misplaced. We note the language of the statute (cited in full, supra):
B. In any application for life or health and accident insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. The falsity of any such statement shall not bar the right to recovery under the contract unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer. (Emphasis ours.)
TIG focused much of their argument on the "intent to deceive" portion of the statute and the material issues of fact (or lack thereof) surrounding the policy claim by the LTPA and Ms. Tiller; however, we find the second (italicized) portion to be more persuasive. In the case sub judice, Ms. Tiller's silence regarding Ms. Brignac's fall did materially affect the acceptance of risk and the hazard assumed by Trinity. The record very clearly indicates that, as stated, supra, virtually everyone involved in this suit knew about Ms. Brignac's fall and injury except Trinity. As discussed at length, supra, it defies the basic principles of Louisiana jurisprudence and common business practice for Trinity to issue a coverage policy assuming a known liability. For these reasons, TIG's arguments on this point are misplaced and we reject the first two issues in this case.

Issue Number Three (verbatim): Whether material issues of fact preclude summary judgment denying coverage and Trinity's duty of defense and indemnity to the Monroe Civic Center when the trial court determined the existence of a valid contract between the LTPA and the Monroe Civic Center to hold the Summit where the plaintiff was injured and Trinity charged a premium to backdate an endorsement to add the Monroe Civic Center as an additional insured under the Trinity policy which contains Lessor of Premises endorsement and a Designated Organization endorsement?

TIG next argues that Trinity owes indemnity and defense to the Civic Center as an additional insured under the Trinity insurance policy. It contends that the language of the Trinity policy indicates that the Civic Center fell under the terms and "schedule" of this policy. Similarly, TIG contends that the trial court correctly denied *279 the motion for summary judgment in favor of the LTPA as it related to the contract with the Civic Center.
TIG argues that, but for the LTPA Summit, Ms. Brignac would not have been on the Civic Center premises. Trinity argues that Fleniken v. Entergy Corp., 99-3023, 99-3024 (La.App. 1st Cir.2/16/01), 790 So.2d 64, writs denied, 01-1269 (La.6/15/01), 793 So.2d 1250 and 01-1295 (La.6/15/01), 793 So.2d 1252, is instructive on this point. The plaintiff in Fleniken, supra, was injured when he stood on top of an 18  wheeler operated by Safeway Transportation, Inc. on premises owned by TMI Enterprises, Inc. and came in contact with a electrical line. Pursuant to a written lease, TMI leased an office building and half of a wash rack (for washing the bulk trailers) to Safeway. As part of the aforementioned lease, Safeway secured insurance coverage from Zurich and added TMI as an additional insured under its policy. The pertinent policy language in Fleniken stated, "[t]hose entities with whom the Named Insured [Safeway] executes a written Contract ... [are] include[d] as an insured ...." Accordingly, Zurich argued on appeal that TMI was not an additional insured because Safeway was not "performing functions" for TMI at the time of the accident, as TMI had no interest in the trailer or commodities of Safeway. The Fleniken court disagreed, stating:
Zurich's reading of the endorsement is too restrictive. Upon analysis of the relationship between Safeway and TMI, it is apparent that Safeway, as a reasonable insurance policy purchaser, would not have construed the endorsement terms as Zurich suggests.
. . . .
If the provision is read as Zurich suggests, TMI would never be covered under the insurance policy; Safeway never hauled commodities for TMI because TMI was not a manufacturer. Thus, Safeway would have paid a premium for the addition of TMI as an insured, but the insurer would have provided no coverage for which it charged the premium. As apparent from the record, Safeway agreed in its written contract of lease to procure liability insurance. TMI required the standard, additional-insured endorsement in order to attain an additional layer of insurance to its own coverage in the event of its liability arising from the operations of Safeway on its property. The fact that the haul was being `performed for' another company did not bar the operation from being `performed for' TMI as well.
From this, TIG notes that the LTPA purchased an additional insured endorsement in favor of the Civic Center and Trinity even backdated the premium as a result. Accordingly, it argues that Trinity's interpretation is, as Zurich's was in Fleniken, supra, too restrictive.
TIG next argues that the insurance policy between Trinity and the LTPA is nothing more than a contract and that it should be interpreted as such. See, Epps v. City of Baton Rouge, 604 So.2d 1336 (La.App. 1st Cir. 1992). It notes that insurance policies must be construed liberally, in favor of coverage, and provisions susceptible of different meanings must be interpreted with a meaning that renders coverage effective rather than ineffective. See, RPM Pizza, Inc. v. Automotive Cas. Ins. Co., 601 So.2d 1366 (La.1992).
Similarly, TIG contends that the insurance contract in this case contains an endorsement naming the Civic Center as an additional insured. It states that said endorsement is shown on the policy itself as having an effective date that covers the date of Ms. Brignac's incident in this case. *280 From this, it argues that, in the absence of any ambiguous language in the policy, the Civic Center, as an additional insured, is presumed to be insured on the date of her accident. In other words, if Trinity did not intend for this policy to cover a known loss, they should have made mention of as much in their endorsement.
Trinity responds that the LTPA and the City fraudulently secured insurance coverage to encompass the time of Ms. Brignac's accident and injury. It notes that a fraud "is a misrepresentation or a suppression of the truth" made by one party to obtain some form of unfair advantage to one party or cause loss or inconvenience to another party.[7] Trinity states that silence or inaction can result in fraud; and, in this case, Ms. Tiller's silence regarding her knowledge of Ms. Brignac's accident created an unfair advantage for the City and the LTPA and constituted fraud. Accordingly, Trinity asserts that its coverage policy to the City and the Civic Center should be ruled void.
Trinity further contends that, even assuming, arguendo, that this court finds that the City was an "insured" under its insurance policy, there still exists no coverage for the City's (alleged) liability. It asserts that the insurance policy in this case is void ab initio as it relates to the addition of coverage because Ms. Tiller intentionally withheld her knowledge of Ms. Brignac's injury. In summation, Trinity contends that TIG "tortures and twists the [Trinity] policy language in a misguided attempt to find coverage where none exists."
Similarly, Trinity asserts that the liability of the Civic Center does not arise out of the LTPA's "operations" but, rather, arises from its own failure to address the damp floors caused by improper use of the center's HVAC system. Trinity notes that the LTPA's "operations" are irrelevant here because it did nothing to contribute to the damp floors, nor is any allegation made that it had a duty to remedy them. It argues that the City and the Civic Center have their own insurance in place (from TIG) to insure for premises liability issues such as this one. Moreover, Trinity states that its policy with the LTPA does not and is not intended to insure the City or the Civic Center against all risks, but, rather, is intended to insure those other than the LTPA against risks potentially arising out of the LTPA's operations. To this end, it argues that TIG's reliance on Fleniken, supra, is misplaced as, in that case, Safeway had a long-term lease and permanent presence with TMI Enterprises. To the contrary, in this case, the LTPA had only a loan of the Civic Center's premises and had no duty to remedy potential hazards therein.
In summation, Trinity argues that TIG is attempting to have this court "condone a conscious failure" to disclose Ms. Brignac's accident by Ms. Tiller and the City. We agree.
The record in the case sub judice reflects that the trial judge ruled correctly on the motions for summary judgment in this case and that Trinity owed no indemnity to the City or the Civic Center regarding Ms. Brignac's accident and injury, as the insurance policy was void ab initio.
First, Louisiana jurisprudence is clear (as discussed at length, supra) that a valid insurance contract cannot be issued and enforceable "post loss/liability." As stated, supra, it is a general guiding principle that insurance companies do not insure for liabilities that have already occurred.
*281 Counsel for TIG argues that Ms. Tiller had no duty to "overtly" misrepresent her knowledge of Ms. Brignac's injury, or, alternatively, that Trinity should have asked whether or not an injury occurred during the LTPA Summit prior to issuing a policy. We disagree with this position. The record reflects that Ms. Tiller was an experienced and knowledgeable insurance purchaser who admitted to withholding information regarding Ms. Brignac's accident when she obtained the policy. In her deposition testimony, the Ms. Tiller stated the following:
Q: You've worked with the insurance for LTPA for a number of years; is that correct?
A: That's correct.
Q: Do you have any understanding  and if you don't, just tell me  of whether or not an insurance company would insure an injury or damages after they have already happened?
A: I do have knowledge that they would not do that. They would not cover  you know, if you have an automobile incident and you're not insured and you go out the next day and get insurance, they're not going to cover your accident that happened the day before. (Emphasis ours.)
In our view, this demonstrates knowledge by Ms. Tiller that this manner of securing insurance coverage was not appropriate. Further, nowhere on this record does TIG dispute that everyone involved in this case knew of Ms. Brignac's fall and injury, except Trinity, nor does it dispute that the accident did occur and was not disclosed to Trinity upon Ms. Tiller's application for insurance coverage. Instead, TIG asserts that all of this is irrelevant because no member or associate of Trinity specifically asked whether any form of liability had occurred prior to issuing its policy to the LTPA or because a premium was collected ("backdated")[8] following Ms. Tiller's policy request. It is clear that Trinity would not have collected a premium  backdated or otherwise  in this case (had it known of Ms. Brignac's accident) because it would not have issued a policy in the first place because it was an insurable risk. Such is the standard business practice of insurance companies and the jurisprudence mirrors this practice. For these reasons, we reject TIG's arguments on this point.
We further find that TIG's reliance on Fleniken, supra, is misplaced. As noted in Trinity's arguments, supra, Safeway had a long-term lease from TMI Enterprises in Fleniken and an established presence on the leased premises. To the contrary, in the case sub judice, the LTPA had use of the Civic Center for a markedly shorter (and not long term or continual) time period. Moreover, the plaintiff in Fleniken was injured when employing a wash rack that Safeway itself had renovated. Again, to the contrary, here, the premises of the Civic Center  where Ms. Brignac's fall and accident occurred  were under the exclusive control of the City and the Civic Center management. For these reasons, we reject the arguments of TIG on this issue.

CONCLUSION
For the reasons set forth herein, the judgment of the trial court in favor of Trinity Universal Insurance Company of Kansas is affirmed. Similarly, the trial court's denial of the LTPA's Motion for Summary Judgment is affirmed. Costs of *282 this appeal are assessed to TIG Insurance Company, the City of Monroe and the Monroe Civic Center.
AFFIRMED.
NOTES
[1] The complete procedural posture of the case sub judice is discussed at length, infra.
[2] For a discussion of the "known loss" doctrine, see, infra.
[3] We have elected to combine these issues for the purposes of this appeal. Similarly, the arguments submitted by TIG and the City/Civic Center have been combined for the purposes of this opinion and these entities will be referred to collectively as "TIG.".
[4] This issue is taken, verbatim, from TIG's brief. This court notes that the "beyond a reasonable doubt" standard is inapplicable to this civil action.
[5] We note that neither case mentioned here is from this circuit, nor does our research suggest that either has been adopted by this circuit.
[6] This court wonders, were the roles reversed, if TIG would readily issue a policy to cover known injury or loss to an insured seeking coverage who failed to mention said injury or loss upon application. The answer would almost assuredly be a resounding "no."
[7] See, La. C.C. Art. 1953.
[8] We further note that, save a mention of it by one witness at trial and the occasional reference of it by TIG, there exists no objective evidence reflecting any backdated premium which Trinity collected for its policy issuance in this case.