708 So.2d 526 (1998)
The ESTATE OF Gaston PATOUT and Roy Patout, Plaintiff-Appellant,
v.
The CITY OF NEW IBERIA, Louisiana, Defendant-Appellee.
SQUIRREL RUN INVESTMENT GROUP, INC., Plaintiff-Appellant,
v.
The CITY OF NEW IBERIA, Defendant-Appellee.
The ESTATE OF Gaston PATOUT, Plaintiff-Appellant,
v.
CITY OF NEW IBERIA, Defendant-Appellee.
Nos. 97-1097, 97-1098 and W97-1070.
Court of Appeal of Louisiana, Third Circuit.
March 6, 1998.
Porteus Richard Burke, New Iberia, P. J. LaBorde, Jr., Lake Charles for The Estate of Gaston Patout, et al.
Charles J. Foret, Lafayette, Allison M. Edwards, for City of New Iberia in No. W97-1070.
H. Lee Leonard, Lafayette, Julie Anne Scheib, New Orleans, Dwight Stephens, Michael *527 J. Schwab, New York City, for Twin City Fire Insurance in No. W97-1070.
Craig Lewis Caesar, James Michael Garner, New Orleans, Scott R. Hoyt, Dallas, TX, Peter C. D'Apice, for Century Indemnity Company and Pacific Employers Ins. in No. W97-1070.
Gary Mark Zwain, Andrew David Weinstock, Metairie, for Continental Insurance Company in No. W97-1070.
Ralph Shelton Hubbard, III, Loree Peacock LeBouef, New Orleans, for Travelers Ins. Co. in No. W97-1070.
Charles J. Foret, Lafayette, for City of New Iberia in Nos. 97-97-1097 and 97-1098.
J. Clayton Davie, Jr., for Travelers Insurance Co., et al. in Nos. 97-1097 and 97-1098.
Craig Lewis Caesar, New Orleans, Scott R. Hoyt, Dallas, TX, for Century Indemnity Co. and Pacific Employers Ins. in Nos. 97-1097 and 97-1098.
Gary Mark Zwain, Metairie, for Continental Insurance Co. in Nos. 97-1097 and 97-1098.
H. Lee Leonard, Lafayette, Julie Anne Scheib, New Orleans, Louis G. Adolfsen, New York City, for Twin City Fire Insurance in No. 97-1097 and 97-1098.
Samuel Milton Rosamond, III, Metairie, for Commercial Union Insurance Co.
Porteus Richard Burke, New Iberia, P. J. LaBorde, Jr., for Squirrell Run Inv. Group, Inc.
Before SAUNDERS, SULLIVAN and GREMILLION, JJ.
SAUNDERS, Judge.
Plaintiffs filed suit against the City of New Iberia (City) and its insurers for damages due to trespassing resulting from the operation of a municipal landfill adjacent to their property. The defendants filed numerous defenses and exceptions, one of which was a peremptory exception of prescription. The district court, in its final judgment on the issue of prescription, granted the peremptory exception of prescription as to certain claims of trespass and denied others. Finding all of the plaintiffs' claims for damages to be viable, we reverse the holding by the trial court to the contrary.

FACTS
The material facts which concern this court are not in dispute. The plaintiffs, the heirs of Gaston Patout and the Squirrel Run Investment Group, Inc., are landowners in Iberia Parish who brought this action against the City of New Iberia for trespassing on their land over a long period of time. The trespass involves large amounts of waste material which city employees failed to confine to a tract of land leased by the City for the purpose of operating a landfill. Due to improper operation of the landfill, garbage was pushed well beyond the leased premisses onto several acres[1] of the plaintiffs' land. On several occasions, the City has acknowledged its wrongful conduct and stated that the encroaching waste material would be removed. One such acknowledgment took place in February 1982 in the form of a document entitled "Memorandum of Agreement," wherein the Mayor of New Iberia and the adjacent property owners agreed to certain corrective measures[2] which would be taken by the City. At present, the garbage dumped upon the plaintiffs' property has yet to be removed.
Plaintiffs filed suit against the City of New Iberia and its insurers seeking general damages for mental anguish and other claims of injury to the person, as well as special or property damages related to diminution in value to their immovable property, cost of restoration and remediation. Squirrel Run seeks abatement or injunctive relief against the City of New Iberia for the continuing trespass on its immovable property.
*528 Each defendant filed a peremptory exception of prescription wherein they alleged that, pursuant to La.R.S. 9:5624, claims alleging damage to private property as a consequence of public works prescribe two years from the date damages are sustained. Defendants claim that damages were sustained at the commencement of the trespass, which occurred in the early 1970's.
The trial court, however, ruled that La. R.S. 9:5624 did not apply to the plaintiffs' claims since their alleged damages were not a necessary consequence of the landfill operations. Instead, the trial court ruled that La.Civ.Code art. 3492 and 3493 applied. Under these articles, such claims prescribe within one year of the date plaintiffs become aware of damage to their property. The trial court also ruled that, due to the 1982 "Memorandum of Agreement" between the City and the plaintiffs, the city renounced prescription and that these and other actions on behalf of the City lulled the plaintiffs into inaction.
Nevertheless, the trial court ruled that any of the plaintiffs' claims arising after February 23, 1981, had prescribed, and that claims arising before that date had been renounced by the City by virtue of the February 24, 1982, "Memorandum of Agreement," and thus had not prescribed.[3]

LAW AND ARGUMENT
The Louisiana Supreme Court case of Lyman v. Town of Sunset, 500 So.2d 390 (La. 1987) is replete with legal principles which aid us in resolving this matter. In Lyman, a land developer brought suit against the Town of Sunset alleging that the town's operation of a landfill diminished the property value and marketability of a nearby subdivision development. On writ of certiorari, the Louisiana Supreme Court held that the two year prescriptive period under La.R.S. 9:5624 applied rather than the general one year prescriptive period applicable to delictual actions, and that the two year prescriptive period begins to run from the first occurrence of damage after completion of the public work, i.e., at commencement of operation of the landfill.
Of paramount importance, the supreme court in Lyman further tells us that in order for La.R.S. 9:5624 to be applicable, the damage to the private property must be a necessary consequence of the public purpose. See also, Roberts v. Murphy Oil Corp., 577 So.2d 308, (La.App. 4 Cir.), writs denied, 580 So.2d 670, 673 (La.1991); Boudreaux v. Terrebonne Parish Police Jury, 422 So.2d 1209 (La.App. 1 Cir.1982); Perkins v. Simon, 265 So.2d 804 (La.App. 3 Cir.1972).

Was the Trespass Upon The Plaintiffs' Land a "Necessary Consequence" of the Landfill Operation?
Plaintiffs-appellants claim that the dumping and pushing of garbage onto several acres of their land was certainly not a necessary consequence of the operation of the landfill. In support of their position, they refer to the pre-trial hearing testimony[4] of Mr. Eugene Sellers, a civil engineer with expertise in the area of environmental engineering, who testified that it was his opinion that the City did not properly build its access road to the dump and that the City had no need to place garbage on neighboring property. When asked whether it was necessary for the operators of the dump to place garbage on the plaintiffs' property, Mr. Sellers replied:
In my opinion it was not necessary. If the access road would been properly constructed to be able to withstand the traffic that they were expecting for garbage trucks, then that access road should have been sufficient to get to the leased property where the garbage would have been disposed on the leased property.
*529 Sellers furthered testified that the City should have outlined the leased property to insure that all garbage remained within the property leased for the landfill.
Q: Okay, based on your experience as an engineering and surveyor, can you tell us what the proper methodology would have been to delineate the outline of lease in order to insure the comply once stay within the footprint of the lease and not go over the neighbor's property with garbagesolid waste.
A: Yes, of course, the first thing that should be done is that the leased area should be defined by a survey and that boundaries be established either by fence or survey stakes, and the area impacted should be within that boundary survey.
Sellers further stated,
[A]nd there should have been no reason why did leased area couldn't have operated officially within that area during the time that they were operating in. It would have been just as easy to have developed that area to where they could operate the garbage, the landfill without having to get on adjacent property because the terrain was the same, and if they could get to leased area there was no reasons why they should have gone adjacent to the leased land.
In ruling on this issue the trial court stated:
After careful analysis of the pleadings in these proceeding, documents admitted into evidence and testimony adduced at trial on the exception ... This court concludes the damages allegedly sustained by the Patouts and Squirrel Run were not a necessary consequence of the operation of the landfills which are the subject of this litigation and declare La.R.S. 9:5624 inapplicable to this case.
This determination by the trial court, as a finding of fact, may not be overturned absent manifest error.
In civil cases, the appropriate standard for appellate review of factual determinations is the manifest error-clearly wrong standard which precludes the setting aside of a trial court or jury's finding of fact unless those findings are clearly wrong in light of the record reviewed in its entirety. Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/94), 630 So.2d 706; Rosell v. ESCO, 549 So.2d 840 (La.1989).
In re Caulfield, 96-1401 (La.11/25/96); 683 So.2d 714.
Finding that the trial judge was correct in his factual determination that the trespass was not a necessary consequence of the operation of the landfill, we obviously cannot conclude that such determination constituted manifest error.
In support of their contrary position, the City of New Iberia inappropriately contends that the "necessary consequence" doctrine does not apply where the operation of a landfill or sewage system is at issue. They refer to the case of Small v. Avoyelles Parish Police Jury, 589 So.2d 1132 (La.App. 3 Cir.1991), writ denied, 593 So.2d 374 (La. 1992), which states:
Plaintiffs also cite the recent case of Roberts v. Murphy Oil Corporation, 577 So.2d 308 (La.App. 4th Cir.1991), writs denied, 580 So.2d 670, 673 (La.1991) to support their argument that La.R.S. 9:5624 is inapplicable to the instant case because their damages were not an intentional and necessary consequence of the operation of an adequate sewerage system. Roberts, however, does not concern the operation of a public project such as the landfill in Lyman or the sewerage system in the instant case. We find the facts of Lyman are closer to those alleged herein, and as a Supreme Court decision, we are bound to apply it.
Id. at 1134.
Additionally, appellees rely heavily on Lyman, 500 So.2d 390, as well as LeBlanc v. City of Lafayette, 558 So.2d 259 (La.App. 3 Cir.1990), since each dealt with municipal landfill operations and both courts concluded that the plaintiffs' claims had prescribed since they were filed more than two years after the commencement of the damage caused by the operation of the landfill.
We find Lyman and LeBlanc clearly distinguishable from the case at bar. In Lyman, 500 So.2d 390, plaintiff's complaint dealt with the mere presence of the dump *530 with its accompanying odor and resulting devaluation of neighboring property. In LeBlanc, 558 So.2d 259, plaintiffs complained of, among other things, ditches being littered with trash and excessive dust with nauseating odors. Neither of these cases dealt with the physical trespass of debris across property lines. On the contrary, the complaints in Lyman and LeBlanc stemmed from the very operation of the landfill itself.
In the case before us, it is clear that the trespass committed by defendants had nothing to do with the necessary and proper operation of the landfill, but was caused solely by the negligence of the City's employees or agents.
Regardless of the language cited by appellees in Small, 589 So.2d 1132, or the outcomes reached in Lyman, 500 So.2d 390, and LeBlanc, 558 So.2d 259, it is clear that the "necessary consequence" doctrine outlined above should be applied here. In Lyman, the Louisiana Supreme Court clearly considered this legal principle before reaching its' conclusion.
In these cases, damage to private property was a necessary consequence of the public purpose making 9:5624 applicable.
....
In this case, the alleged damage to private property was a necessary consequence of the operation of the landfill. Clearly R.S. 9:5624 applies.
Lyman, 500 So.2d at 393.
The City of New Iberia attempts to further support its position by referring to testimony of its employees att the pre-trialhearing on prescription. These employees testified that when it was wet, the access road to the dump site was inaccessible and the bulldozers were forced to push the garbage into the dry areas located on the plaintiffs' property. Appellees claim that due to the circumstances, the pushing of trash onto the neighboring property was a necessary consequence of the operation of the landfill. We are not persuaded by this argument. The case of Perkins, 265 So.2d 804, provides clear guidance on this issue. In Perkins, this court stated:
The two year prescriptive period therein provided is applicable only when the damage to private property is the intentional and necessary result or consequence of the construction work incidental to a public purpose. It is not applicable to a claim for damages resulting exclusively from the negligent acts or omissions of the principal, or its agents or employees. Florsheim v. Department of Highways, 201 So.2d 155 (La.App. 2 Cir.1967); Miller v. Colonial Pipeline Company, 173 So.2d 840 (La.App. 3 Cir.1965); Angelle v. State, 212 La. 1069, 34 So.2d 321 (1948).
Id. at 808.
The record before us clearly establishes that the City was negligent in its operation of the landfill. This is disputed by none of the parties involved. It is also clear that ample land existed in order for the proper operation of the landfill without having to resort to pushing garbage onto the plaintiffs' property. It is our opinion that when the City employees were building their access road or actually using the leased property for dumping purposes, there was absolutely no legitimate or necessary reason to cross over onto the plaintiffs' property to place rubbish and allow it to remain there. This conduct can be contrasted with other types of operations resulting in damage to neighboring property where La.R.S. 9:5624 would apply, such as when a private neighboring building is damaged due to the necessary vibrations in the construction of a highway. In the case before us, had the landfill been operated properly, the City would have taken measures to utilize more of the designated property under the lease for the dumping of trash, instead of resorting to dumping and pushing it onto the plaintiffs' land.
Since the trespass onto the plaintiffs' property was not a necessary consequence of the operation of the landfill, we find La.R.S. 9:5624 to be inapplicable.

Prescription
Finding La.R.S. 9:5624 to be inapplicable, and considering the continuous nature of the act of trespass and damage committed by the City of New Iberia, we find the plaintiffs' causes of action to be imprescriptible as long as the trespass continues.
*531 Ordinarily, an action for damages to immovable property is subject to a one year liberative prescription, and "prescription commences to run from the day the owner of the immovable acquired, or should have acquired, knowledge of the damage." La.Civ. Code arts. 3492, 3493. However, "[w]hen the tortious conduct and resulting damages continue, prescription does not begin until the conduct causing the damage is abated." South Central Bell Telephone Co. v. Texaco, Inc. 418 So.2d 531, 533 (La.1982).
This position is further buttressed by the following analysis by Prosser and Keaton on torts:
The ordinary trespass is complete when it is committed; the cause of action accrues, and the statute of limitations begins to run at that time, although the consequences may be a permanent injury to the land. But in many cases, as where the defendant erects a structure or dumps rubbish on the land of the plaintiff, the invasion is continued by a failure to remove it. In such a case, there is a continuing wrong so long as the offending object remains. (emphasis added.)
W. Page Keaton Et Al., Prosser and Keaton on the Law of Torts, § 13, at 83 (5th ed.1984).
In the case before us, it is undisputed that the rubbish deposited on the property of the plaintiffs has yet to be removed. Appellees improperly contend that since the landfill stopped receiving waste in October of 1989, the City's tortious conduct ended at least three years before the plaintiffs filed suit in 1992 and 1993. The rule set forth in South Central Bell clearly applies to the City's conduct of allowing the trash to remain. Our courts have held that debris or other objects placed on another's property constitutes a continuing trespass and prescription does not apply until the offending acts are abated. See Dore v. Jefferson Guar. Bank, 543 So.2d 560 (La.App. 4 Cir.1989); Terral v. Poole, 484 So.2d 227 (La.App. 3 Cir.1986).

CONCLUSION
In light of the foregoing, we find La.R.S. 9:5624 to be inapplicable to the facts before us. Instead, the plaintiffs' claims are subject to one year liberative prescription set forth in La.Civ.Code. art. 3492 and 3493, and the exception to the one year prescription set forth in South Central Bell, 418 So.2d 531. Since the trespass continues on the plaintiffs' property, we find that prescription has not yet begun to run.
Accordingly, for the foregoing reasons, we reverse the judgment of the trial court holding that the plaintiffs' claims arising after February 23, 1981, have prescribed. Instead, we find all claims on behalf of the plaintiffs to be viable. This case is remanded to the trial court for further proceedings consistent with this opinion.
Costs of this appeal are assessed against The City of New Iberia. Costs at the trial level to await trial on the merits.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
NOTES
[1] Although the specific volume has not been introduced into evidence, it is estimated that there are approximately thirty acres of garbage remaining on the plaintiffs' property and that this garbage is approximately three to ten feet deep.
[2] These corrective measures included removing the garbage placed in error upon the plaintiffs' property, spreading dirt on the affected area, and for drainage purposes, relocating a water outlet, installing one or more culverts, and acquiring rights-of-way for a drainage ditch or canal.
[3] The trial judge based this conclusion on La.Civ. Code art. 3449, which states, "Prescription may be renounced only after it has accrued." Thus, he found that the "Memorandum of Agreement" could only serve to renounce that previous time period in which prescription had accrued, i.e., those claims arising on or before February 23, 1981.
[4] The reader of this opinion should be warned of numerous typographical and spelling errors found in the pre-trial hearing transcript. In order to prevent potential additional misquotes, the quoted testimony is reproduced verbatim from the record before us.