849 So.2d 535 (2002)
The ESTATE OF Gaston PATOUT and Roy Patout
v.
The CITY OF NEW IBERIA, Louisiana.
No. 02-278.
Court of Appeal of Louisiana, Third Circuit.
December 27, 2002.
Opinion on Rehearing March 19, 2003.
*536 Porteus R. Burke, Burke and Cestia, New Iberia, LA, for Plaintiffs/Appellants/Appellees, The Estate of Gaston Patout and Roy Patout and Squirrel Run Investment Group, Inc.
Charles L. Foret, Carol S. Hunter, Briney & Foret, Lafayette, LA, for Defendant/Appellee/Appellant, The City of New Iberia, Louisiana.
*537 S. Dwight Stephens, Melito & Adoflsen PC, New York, NY, for Defendant/Appellee, Twin City Fire Insurance Company.
H. Lee Leonard, Leonard & Leonard, Lafayette, LA, for Defendant/Appellee, Twin City Fire Insurance Company, (Hartford).
Martin E. Golden, Kantrow, Spaht, Weaver & Blitzer, Baton Rouge, LA, for Defendant/Appellee, Twin City Fire Insurance Company.
James R. Sutterfield, Sutterfield Webb, LLC, New Orleans, LA, for Defendant/Appellee, Insurers Indemnity & Insurance.
Ralph S. Hubbard, III, Rankin & Hubbard, New Orleans, LA, for Defendants/Appellees, The Travelers Insurance Company, The Travelers Indemnity Company, Rhode Island.
Gary M. Zwain, Duplass, Witman, Zwain & Williams, Metairie, LA, for Defendant/Appellee, Continental Insurance Company.
Craig E. Caesar, McGlinchey Stafford, New Orleans, LA, for Defendants/Appellees, Century Indemnity Company & Pacific Employers Insurance Company.
James M. Garner, Keith A. Kornman, Emma E. Daschbach, Sher Garner Cahill Richter, Klein McAlister & Hilbert L.L.C., New Orleans, LA, for Defendants/Appellees, Century Indemnity Company & Pacific Employers Insurance Company.
Samuel Rosamond, III, Boggs, Leohn & Rodrigue, New Orleans, LA, for Defendant/Appellee, Commercial Union Insurance Company.
Scott R. Hoyt, Gibson, Dunn & Cretcher, LLP, Dallas, TX, for Defendants/Appellees, Century Indemnity Company & Pacific Employers Insurance Company.
C. Burwick Duval, II, Duval, Funderburk, Sundbery and Lovell, L.L.P., Houma, LA, for Defendant/Appellee, United Community Insurance Company.
Kelly Cambre Bogart, Andrew D. Weinstock, Kathleen C. Marksbury, Duplass, Zwain, Bourgeois & Morton, Metairie, LA, for Defendant/Appellee, Twin City Fire Insurance Company.
Court composed of ULYSSES GENE THIBODEAUX, SYLVIA R. COOKS and JIMMIE C. PETERS, Judges.
THIBODEAUX, Judge.
In this suit for trespass, plaintiffs, the heirs of Gaston and Roy Patout ("Patout") and Squirrel Run Investment Group, Inc. ("Squirrel Run"), and defendant-appellant, the City of New Iberia ("City"), appeal the judgment of the trial court which granted defendants', Century Indemnity Company ("Century") and Pacific Employers Insurance Company ("PEIC"), motions for summary judgment on the basis of assumed or contractual liability and on the "sudden and accidental pollution" exclusions contained in the insurers' policies. The trial court concluded that the City assumed liability for the negligent dumping of waste and garbage materials onto the plaintiffs' property when it signed a Memorandum of Agreement acknowledging its negligent conduct and future efforts to cleanup the site. Further, the court held that defendant insurers were not required to provide coverage for the City's negligent acts based on "pollution exclusion" clauses in their policies.
Additionally, plaintiffs appeal defendant-appellee's, Twin City Fire Insurance Company ("Twin City"), exception of prescription. According to the plaintiffs, the trial court improperly applied the court's holding in Ducote v. Koch Pipeline Co., 98-942 (La.1/20/99); 730 So.2d 432 as authority, when Ducote had been overruled by Doerr v. Mobil Oil Corporation, 00-947 *538 (La.12/19/00); 774 So.2d 119. As a result, plaintiffs assert that the court's application of Ducote wrongfully permitted the trial court to render a judgment granting defendant's exception of prescription.
Defendant, Twin City, appeals the trial court's denial of summary judgment concerning the "known loss" doctrine. Twin City alleges that the trial court relied on an inapplicable section of the Louisiana Insurance Code rendering the "known loss" doctrine void. Twin City asserts that the City was fully aware of its wrongful dumping and under current insurance law, coverage for known losses is denied.
After a review of the facts and evidence, we find that the trial court erred in granting defendants' motions for summary judgment on assumed liability and the "pollution exclusion" clause. We affirm our previous judgment finding that the City's negligent dumping was a continuing trespass of the plaintiffs' property, and prescription had not run. Estate of Patout v. City of New Iberia, 01-0151 (La. App. 3 Cir. 4/3/02); 813 So.2d 1248. Further, we affirm the trial courts' denial of summary judgment based on the "known loss" doctrine.

I.

ISSUES

Issues of Estate of Patout, Squirrel Run, and the City of New Iberia as Appellants
We have determined that the following issues encompass both plaintiffs-appellants' and defendant-appellant's assignments of error on appeal:
1) whether the City of New Iberia assumed liability for the negligent dumping of waste materials on the Patout and Squirrel Run properties?
2) whether the trial court erred in denying coverage under the pollution exclusion clause?
3) whether the trial court erroneously granted defendant's exception of prescription?

Issue of Twin City Fire Insurance Company as Appellee
Whether the trial court erroneously denied Twin City's motion for summary judgment based on the "known loss" doctrine?

II.

FACTS
The material facts of this dispute remain consistent with the facts stated in Estate of Patout v. City of New Iberia, 01-015, p. 1 (La.App. 3 Cir. 4/3/02); 813 So.2d 1248, 1249-1250, and are provided below:
The pertinent facts are not in dispute. The City operated a landfill on immovable property adjacent to the plaintiffs' land from the early 1970's through October of 1989[[1]], and during the years of operation, the City pushed garbage beyond the borders of its property onto the plaintiffs' land. On numerous occasions, the City acknowledged its wrongful conduct and informed the landowners that the garbage would be removed. In fact, in February of 1982, the City's mayor executed a document entitled "Memorandum of Agreement" whereby he agreed, on behalf of the City, that certain corrective measures would be taken to clean up the adjacent property. *539 However, the City failed to honor this agreement.

III.

PROCEDURAL HISTORY
After years of continuous dumping and little, if any, cleanup efforts by the City, plaintiff landowners brought suit "seeking general damages for mental anguish and other claims of injury to the person, as well as special or property damages related to diminution in value to their immovable property, cost of restoration and remediation." Estate of Patout v. City of New Iberia, 97-1097, p. 3 (La.App. 3 Cir. 3/6/98); 708 So.2d 526, 527. In response, defendants filed peremptory exceptions of prescription pursuant to La.R.S. 9:5624, alleging that plaintiffs' claims had prescribed under the statute's two-year prescription period for damages on private property for public works. Finding that La.R.S. 9:5624 was inapplicable based on defendant's failure to show that the dumping of garbage was a "necessary consequence" of the City's operation of the landfill, the defendants' exception was denied. However, the trial court found that La.Civ. Code arts. 3492 and 3493, delictual actions and damage to immovable property respectively, were applicable, and one-year prescription began to run from the date plaintiffs became aware of the injury. In light of these statutes, the trial court also took into consideration the February 1982 Memorandum of Agreement signed by the mayor of the City and found that this agreement effectively renounced prescription. Further, the trial court found that claims after February 23, 1981 had prescribed pursuant to the Memorandum, and those before that date were still actionable.
On March 6, 1998, we affirmed the trial court judgment that La.R.S. 9:5624 was inapplicable, and one-year prescription for damage to immovable property under La. Civ.Code arts. 3492 and 3493 was proper. However, since the trespass continued well beyond 1982, prescription had not begun to run. As a result, we reversed the trial court's judgment "holding that plaintiffs' claims arising after February 23, 1981, have prescribed. Instead, we [found] all claims on behalf of the plaintiffs to be viable." Id. at 531.
On July 2, 1998, the City, Century, & PEIC sought writs to the Louisiana Supreme Court based on the Third Circuit's decision in Estate of Patout v. City of New Iberia, 97-1097 (La.App. 3 Cir. 3/6/98); 708 So.2d 526. Upon review, the supreme court granted writ of certiorari to determine "whether lawsuits filed by the plaintiffs... for damages arising from the unauthorized dumping of trash on their land by the City of New Iberia, are governed by the two year prescriptive period of La.R.S. 9:5624, the three year prescriptive period of R.S. 13:5111, or some other prescriptive period." Estate of Patout v. City of New Iberia, 98-0961, p. 1 (La. 738 So.2d 544, 546. The supreme court agreed that La.R.S. 9:5624 was inapplicable. It also concluded that the three-year prescriptive period of La.R.S. 13:5111, asserted for the first time before the supreme court, was also inapplicable because plaintiffs' damages were not incurred for a public purpose constituting a taking. Since the plaintiffs raised no other issues on writ, specifically whether the actions of the City were a continuing tort, the supreme court declined to address other issues and affirmed the lower court's judgment that La.Civ.Code articles 3492 and 3493 were applicable, remanding this case to the trial court for further proceedings.
On its second appeal, plaintiffs appeal the judgment of the trial court, which upheld its previous judgment, that claims after February 1981 had prescribed, releasing *540 the City and all other insurers from liability on those claims. Estate of Patout v. City of New Iberia, 01-0151 (La.App. 3 Cir. 6/27/01); 791 So.2d 741. On this appeal, we found that the law of the case doctrine applied despite defendants' assertion that peremptory exceptions may be raised more than once. The trial court's judgment was final and considered the law of the case. We reviewed this final judgment and found that the trial court was correct in its application of the one-year prescriptive period; however, claims after February 1981 had not prescribed. Again, we reversed the trial court's judgment and remanded for further proceedings.
On December 14, 2001, defendants applied for writs to the supreme court. The supreme court granted writs and remanded the case to this court to reconsider defendants' exceptions of prescription in light of its decision in Crump v. Sabine River Authority, 98-2326 (La.6/29/99); 737 So.2d 720.
On April 3, 2002, this court addressed the issue of prescription a third time to consider the supreme court's decision in Crump, which was rendered "only eight days before its decision in this case." Estate of Patout v. City of New Iberia, 01-0151, p. 4 (La.App. 3 Cir. 4/3/02); 813 So.2d 1248, 1251. Specifically, Crump addressed the issue of whether the digging of a canal causing water to flow over the owner's property was a continuing tort. Crump, 737 So.2d at 720. We found after a careful review of the analysis employed in Crump that the present case was distinguishable, and as a result, "the City's trespass continue[d] and that prescription ha[d] not begun to run." Id. at 1253. Further, "we reverse[d] the trial court's judgment granting the exceptions of prescription as to claims arising after February 23, 1981, and remand[ed] this matter for further proceedings consistent with [the] opinion." Id. On June 12, 2002, defendants sought writs to the supreme court, which it denied. Estate of Patout v. City of New Iberia, 02-1172 (La.6/12/02); 819 So.2d 335.
While this court and the supreme court were addressing the issue of prescription, the Sixteenth Judicial District Court of Iberia Parish rendered a judgment on June 29, 2001, "granting in part and denying in part defendants' exceptions and motions based on the court's prior written reasons for judgment issued December 19, 2000." This court also denied the defendants' motion for summary judgment based on the known loss doctrine, timely notice, claims for mental anguish, and expected and intended property damage exclusions. However, the court granted defendants' summary judgment motions seeking dismissal on the basis of assumed and contractual liability, the "sudden and accidental" pollution exclusion, and its exception of prescription.
Plaintiffs, along with defendant-appellant, the City of New Iberia, now appeal defendants' motions and exceptions that were granted by the trial court. Defendant-appellee, Twin City, appeals the court's denial of summary judgment based on the "known loss" doctrine.

IV.

STANDARD OF REVIEW
Summary judgments are reviewed de novo. "Thus, the appellate court asks the same questions the trial court asks in determining whether summary judgment is appropriate. This inquiry seeks to determine whether any genuine issues of material fact exist and whether the movant is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B).... In this case, there are no factual matters in dispute. *541 Rather, the case involves the interpretation of an insurance policy, a question of law, and we have authority to construe the provisions of the policy in order to resolve questions of coverage." (Citations omitted). Thompson v. McKnight, 01-0190, p. 2 (La.App. 3 Cir. 6/6/01); 787 So.2d 620, 621.

V.

LAW AND DISCUSSION

Assumption of Liability
Patout, Squirrel Run, and the City assert that trial court erred in granting summary judgment in favor of the defendants on the basis of assumed liability. We agree.
According to the City's insurers, the February 1982 Memorandum of Agreement proved that the City assumed liability for dumping garbage materials on the plaintiffs' property, thereby releasing them from liability. Insurers rely on the following provision[2], which prohibits an insured from assuming liability without foregoing insurance coverage.
This insurance does not apply:
to liability assumed by the Insured under any contract or agreement except an incidental contract; but this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner.
After reading the above exclusion in conjunction with the City's Memorandum, we find that the February 1982 Memorandum of Agreement serves as a mere acknowledgment of the City's wrongful dumping rather than an assumption of its liability. The Memorandum of Agreement states that the meeting was held to address a "solution to the garbage and drainage problems," on plaintiffs' properties, not the damage done on their land. On or about October 25, 1977, the mayor of the City received a letter from Perry Segura, one of the owners of the Darby Estate, which is now Squirrel Run, inquiring specifically whether the City intended to make recompense or repairs for the damage done to the owners' land. In his letter, Segura stated that he was "willing to accept certain work to be done by the City in lieu of the damages done to their property." Though Segura specifically raises the issue of damages, the Memorandum makes no reference to damages nor that the City would assume liability for those damages.
"Under a duty-risk analysis for liability, five basic factors must be met: ... (1) duty; (2) breach of duty; (3) cause-in-fact; (4) scope of liability or scope of protection; and (5) damages." Bullara v. Checker's Drive-In Restaurant, Inc., 98-1331, p. 3 (La.App. 3 Cir. 3/3/99); 736 So.2d 936, 938. The February 1982 Memorandum of Agreement indicates no liability for damages. Additionally, we cannot find any evidence that the plaintiffs agreed to forgo litigation in lieu of repair to the site. As a result, the City did not assume liability for damages to the Patout and Squirrel Run properties. Further, defendant insurers could not eliminate their liability for the City's negligent dumping since failure to remove the garbage would violate the warranty of workmanlike performance. Consequently, we reverse the *542 trial court's judgment that the City assumed liability for damages on the plaintiffs' properties pursuant to the February 1982 Memorandum of Agreement and that the insurers were released from liability.

Pollution Exclusion
Patout, Squirrel Run, and the City argue that the "pollution exclusion" clauses contained in the City's insurance policies do not exempt from coverage negligent dumping of garbage on the plaintiffs' properties when one of the City's services is garbage collection. We agree with their contention, albeit, on different grounds.
In Estate of Patout v. City of New Iberia, 01-0151 (La.App. 3 Cir. 4/3/02); 813 So.2d 1248, we held that the illegal dumping of garbage material from approximately 1972 to 1985 on the landowners' properties constituted a continuing trespass. As we read plaintiffs' petitions and briefs, we do not find where Patout nor Squirrel Run asserted claims of pollution against the City. Despite plaintiffs' failure to make a pollution allegation, defendants continue to assert as a defense pollution exclusion to ward off their liability as insurers. We find that defendants insistence on utilizing this exclusion to release them from liability is without merit for this is a case in trespass and there is no necessity for this court to view the City's dumping as pollution. Nevertheless, even if we were to recognize that defendant's pollution exclusions are relevant to this case, the supreme court's analysis in Doerr would prevent defendants' "pollution exclusion" claims.
In Doerr, the supreme court determined that there are three basic factors that must be considered to determine the applicability of a pollution exclusion clause:
1) whether the insured is a polluter within the meaning of the exclusion?
2) whether the injury-causing substance is a pollutant within the meaning of the exclusion; and,
3) whether there was a discharge, dispersal, seepage, migration, release, or escape of a pollutant by the insured within the meaning of the policy?
Id. at 135.
Defendants have failed to meet the factors set out in Doerr. Insurers have not established that the City is a polluter under the exclusion, whether the illegal dumping of garbage is deemed a pollutant, nor whether pushing the garbage constitutes a "discharge, dispersal, seepage, migration, release, or escape of a pollutant" by the City within the meaning of the policy. As a result, defendants' failure to apply the Doerr factors militates against receiving a judgment from this court that the City is indeed a polluter to which the exclusion applies. Further, we are guided by the language in Doerr that insurance policies are obtained to provide coverage, rather than to deny it. For the above reasons, we find that defendants have not adequately proven that the "pollution exclusion" is applicable in this case nor that it includes garbage pushed onto plaintiffs' land. Again, we assert that this is a trespass case. We reverse the trial court's judgment granting the insurers' motions for summary judgment based on the pollution exclusion clause.

Prescription
Additionally, appellants assert that the trial court erroneously granted defendants' exception of prescription. We agree.
On April 3, 2002, this court reconsidered the issue of prescription on remand from the supreme court in light of its decision in Crump. We found, after an examination of the facts and law, that our case represents a continuing tort, which was distinguishable from the facts presented *543 in Crump. As a result, the City's trespass continued due to the City's failure to remove the garbage, and prescription had not run.
Our decision is final pursuant to La. Code Civ.P. art. 2166, which states: "if an application for certiorari to the supreme court is timely filed, a judgment of the court of appeal becomes final and definitive when the supreme court denies the application for certiorari." On or about June 21, 2002, defendants, the City, PEIC, and Century, applied for writs to the supreme court based on our decision in Estate of Patout, 813 So.2d at 1248. Writs were denied by the supreme court on this date. As a result, our judgment on April 3, 2002 that this case is a continuing tort for trespass, and prescription has not begun to run stands. We reverse the trial court's judgment granting the exception of prescription.[3]

"Known Loss" Doctrine
Defendant-appellee, Twin City, asserts that the trial court relied on an inapplicable section of the Louisiana Insurance Code in denying its motion for summary judgment based on the "known loss" doctrine. We agree; however, we rely on different reasoning.
According to Twin City, insurance coverage is prohibited when the insured knowingly damages property or causes bodily injury to a third-party. Under its policy, these are not covered activities. Twin City bases its argument on the fact that the City has been aware of this wrongful dumping in or about 1972, and the potential for claims against the City by the landowners.
In Korossy v. Sunrise Homes, Inc., 94-473 (La.App. 5 Cir. 3/15/95); 653 So.2d 1215, writ denied, 660 So.2d 878 (La.1995), the Louisiana Fifth Circuit Court of Appeal addressed the issue whether "actual or constructive knowledge [that] there was a substantial probability of excessive differential settlement [in homeowners' foundations] claims, prior to the [insurance] policy's effective date" is considered a known loss excluding insurance coverage. The fifth circuit chose not to apply the "known loss" doctrine because it had not "[found any] Louisiana cases which have employed it."[4]
The same holds true for this court. We have found no Louisiana cases that have adopted the "known loss" doctrine. We decline to venture into unchartered waters. As a result, the trial court properly denied application of the "known loss" doctrine. As to the court's use of an inapplicable section of the Louisiana Insurance Code to deny defendant's motion for summary judgment, we are not required to address this issue since the "known loss" doctrine has not been recognized in this state and we refuse to acknowledge such a doctrine. As a result, our decision that the "known loss" doctrine is inapplicable pretermits a discussion of the applicability of La.R.S. 22:619(A) in reference to the "known loss" doctrine. Even if La.R.S. 22:619(A) of the Insurance Code, entitled "Warranties and misrepresentations in negotiation; applications", does apply in this case, defendants have failed to effectively demonstrate that the City issued any warranty or misrepresentation "made in the negotiation of an insurance contract" with an intent to deceive it insurers. Though *544 the City may have failed to inform its insurers of the Memorandum, mere neglect does not equate to an intent to deceive whereby the statute's requirements would be satisfied. We affirm the trial court's judgment that the "known loss" doctrine is inapplicable in this case.

VI.

CONCLUSION
For the above reasons, the judgment of the trial court granting Century Indemnity Company's, Pacific Employers Insurance Company's, and Twin City Fire Insurance Company's motions for summary judgment on assumed liability and pollution exclusion as well as Twin City Fire Insurance Company's exception of prescription is reversed. We affirm the trial court's judgment denying summary judgment based on the "known loss" doctrine. All costs of this appeal are assessed to Twin City Fire Insurance Company.
REVERSED IN PART; AFFIRMED IN PART; AND REMANDED FOR TRIAL ON THE MERITS.

ON REHEARING
This matter is before this court on rehearing to address the following two issues, which were not considered in our original opinion:
1) whether the City of New Iberia's ("City") failure to timely notify Century Indemnity Company ("Century") and Pacific Employers Insurance Company ("PEIC") of potential claims precludes coverage under their policies?
2) whether the City's continued dumping constitutes "expected or intended" property damage, excluding coverage under Century and PEIC's policies?
After examining the law and evidence, we find that the trial court properly denied Century and PEIC's motions for summary judgment on the above issues.

I.

FACTS
The material facts of this suit are stated in Estate of Patout v. City of New Iberia, 01-015, p. 1 (La.App. 3 Cir. 4/3/02); 813 So.2d 1248, 1249-1250, writ denied, 02-1172 (La.6/21/02); 819 So.2d 335, 02-1231 (La.6/12/02); 819 So.2d 336, and are provided below:
The pertinent facts are not in dispute. The City operated a landfill on immovable property adjacent to the plaintiffs' land from the early 1970's through October of 1989[1], and during the years of operation, the City pushed garbage beyond the borders of its property onto the plaintiffs' land. On numerous occasions, the City acknowledged its wrongful conduct and informed the landowners that the garbage would be removed. In fact, in February of 1982, the City's mayor executed a document entitled "Memorandum of Agreement" whereby he agreed, on behalf of the City, that certain corrective measures would be taken to clean up the adjacent property. However, the City failed to honor this agreement.

II.

LAW AND DISCUSSION

Timely Notice
Century and PEIC argue that the City's failure to give timely notice of the *545 Patouts' claim to its insurers precludes coverage under Century and PEIC's policies. We disagree.
Century and PEIC assert that the following provisions require prompt notice of potential claims or suits against the insurer from the insured. The City's failure to timely notify Century and PEIC of the Patouts' claim precludes any coverage provided under their policies.
4. Insured's Duties in the Event of Occurrence, Claim or Suit
(a) In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place, and circumstances thereof, and the names and addresses of the insured and of available witnesses shall be given by or for the insured to its Company or any of its authorized agents as soon as practicable.
(b) If claim is made or suit is brought against the Insured, the Insured shall immediately forward to the Company every demand notice, summons, or other process received by him or his representative....
In Elrod v. P.J. St. Pierre Marine, Inc., 95-295 (La.App. 5 Cir. 10/31/95); 663 So.2d 859, writ denied, 95-2844 (La.2/2/96); 666 So.2d 1098, the plaintiff appealed the judgment of the trial court, which granted an involuntary dismissal in favor of the defendant, Ocean Marine Indemnity Company ("OMI"), for failure, on the part of P.J. St. Pierre Marine, Inc. ("P.J."), to timely notify OMI of Mr. Elrod's suit. OMI's policy contained a provision, which required the insured to provide "prompt notice ... of any casualty or occurrence which may result in a claim under [its] Policy." Id. at 861.
On appeal, Mr. Elrod asserted three arguments adverse to the trial court's judgment. Though the plaintiff failed on its first argument, the court agreed that Mr. Elrod's claim against the insurer should not be denied for failure of P.J. to provide timely notice of the potential occurrence and further suit on the action. According to the court, "the tort victim's claim against the insurer can be maintained despite the insured's failure to notify the insurer of the filing of suit unless... the insurer proves sufficient prejudice to defeat the claim." Id. at 862.
In Elrod, the court held that the insurer properly demonstrated that it had suffered prejudice as a result of the untimely notice. Relying on West v. Monroe Bakery, 217 La. 189, 46 So.2d 122 (1950), the fifth circuit followed the supreme court's ruling "that an injured third party who is not at fault does not lose his cause of action because of the insured's breach of the notice provisions in the policy." Id. at 863, 46 So.2d 122. The supreme court's decision was based on the direct action statute, which permits the injured third party to directly bring its action against the insured. Further, the fifth circuit explained:
"[An] injured third party has two avenues of recovery from the insurer, one by virtue of the insurer's liability to the insured, and the other premised on the insurer's liability to the injured party in a direct action lawsuit. [An] injured party's right to recover in both instance[s] may be defeated if the insurer can demonstrate prejudice from the insured's failure to comply with the policies' notice provisions."
Id. at 863, 46 So.2d 122.
Additionally, the fifth circuit found that OMI had proven sufficient prejudice because OMI had not received notice of the occurrence or claim from P.J. or "any other source, and, therefore, the insurer did not have [an] opportunity to appear in the case and present a defense." Id. at 864, 46 *546 So.2d 122. Thus, OMI's coverage was not applicable.
We find in the present case that Century and PEIC were not prejudiced. In this case, the insurers were made direct defendants in this dispute by the plaintiffs. Additionally, Century and PEIC relied on several exclusions (i.e., pollution exclusion, assumption of liability, etc.) contained in their insurance policies to deny coverage. For this reason, we find that defendants had notice of the pending suit and the opportunity to prepare an adequate defense of the plaintiffs' claims. Therefore, their coverage is not excluded based on the prejudice exception, and Century and PEIC are not entitled to judgment as a matter of law.

Expected or Intended Losses
Century and PEIC assert that any damages related to the City's dumping of garbage onto plaintiffs' properties constitute damage that was expected or intended by the City, therefore, is expressly excluded from coverage by Century and PEIC's policies. We disagree with Century and PEIC that the dumping of garbage materials by the City was expected or intended. As a result, the trial court properly denied defendants' motions for summary judgment on this issue.
According to the terms[2] of the policy, "[t]he Company will pay on behalf of the insured all sums which the Insured shall become legally obligated to pay as damages because of a) bodily injury or b) property damage to which this insurance applies, caused by an occurrence ..." "[O]ccurrence means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."
Previously, this court rendered a judgment in Estate of Patout v. City of New Iberia, 813 So.2d 1248, that the City's dumping of garbage material was a continuing trespass. There is no evidence that the City intended to pollute the Patouts' properties. Testimony from the bulldozer operator, Mr. Joseph Maturin, proved that he never knew where the property lines between the City and the Patouts' properties began nor ended. Further, Mr. Maturin stated that he never intended to dump garbage onto the plaintiffs' properties. Garbage was negligently dumped onto the Patouts' properties when mud made it difficult to reach the back of the property. However, he still did not know that he was dumping on the plaintiffs' property. At least, this information was not communicated to him. As a result, we find that the City was negligent in their dumping activities, but did not intend to cause property damage to the Patouts' properties, creating an expected or intended loss, excluded from the insurers' coverage.

III.

CONCLUSION
For the above reasons, we affirm the trial court's denial of Century Indemnity Company and Pacific Employers Insurance Company's motions for summary judgment on the issues of timely notice and expected or intended losses.
AFFIRMED.
NOTES
[1] Based on testimony from the record, it is not clear that the City continued to push garbage beyond its landfill's borders after 1985, when Waste Management, Inc., a private disposal company, acquired the property.
[2] This assumption of liability exclusion is representative of the types of exclusions used in insurance policies. Some exclusions may or may not make reference to exclusions within an exclusion, such as an incidental contract or workmanlike performance. The purpose of the exclusion is to eliminate the insurer's liability when the insured has assumed liability.
[3] During oral argument, Twin City agreed that the issue of prescription had been settled. It conceded that the judgment of the trial court regarding prescription should be reversed.
[4] See also City of Johnstown, N.Y. v. Bankers Standard Ins. Co., 877 F.2d 1146 (N.Y.1989) (applicability of the "known loss" doctrine).
[1] Based on testimony from the record, it is not clear that the City continued to push garbage beyond its landfill's borders after 1985, when Waste Management, Inc., a private disposal company, acquired the property.
[2] Both insurers' policy provisions were similarly worded.