IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 7, 2009

Charles R. Fulbruge III
Clerk

No. 07-30930

RODCO WORLDWIDE, INC.,

Plaintiff-Appellant,

v.

ARCH SPECIALTY INSURANCE CO.,

Defendant-Appellee.

Appeal from the United States District Court for
the Eastern District of Louisiana
USDC No. 2:07-cv-00108

Before GARZA and ELROD, Circuit Judges, and HICKS, District Judge.[*]

PER CURIAM:[**]

Plaintiff-Appellant RODCO Worldwide, Inc. ("RODCO") appeals the district court's summary judgment in RODCO's declaratory judgment action seeking a determination of the coverage obligations of Defendant-Appellee Arch Specialty Insurance Co. ("Arch") under a professional liability insurance policy issued to RODCO. Finding no error, we affirm.

---

[*] District Judge of the Western District of Louisiana, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. Facts and Proceedings

In June 2004, RODCO and AXIS Surplus Insurance Co. ("Axis") entered a Binding Authority Agreement, under which RODCO agreed to serve as an insurance agent and broker for Axis. Section 5.4 of the agreement provides in relevant part:

> [RODCO] will not accept proposals for insurance, underwrite, rate, quote, issue, deliver, and service binders, certificates, policies, or contracts of insurance and endorsements on . . . risks which are unacceptable in accordance with this agreement or do not conform to the standards and guidelines set forth in the Schedule and Underwriting Guidelines or are in excess of the authority limits or in violation of any other limitations set out in the Schedule and Underwriting Guidelines . . . .

Among other restrictions, the agreement and incorporated underwriting guidelines prohibited RODCO from issuing policies covering (a) property located anywhere other than Louisiana, or (b) greenhouses. RODCO nonetheless issued three Axis insurance policies for property located in Mississippi and one policy for property in Louisiana that included five greenhouses. After receiving notice of the three policies covering property located in Mississippi, Axis notified RODCO of its error in issuing those policies. RODCO canceled two of the policies but failed to cancel the third. Axis also received notice of the policy covering the property in Louisiana that covered greenhouses, but it did not immediately recognize the error.

Hurricane Katrina damaged the properties insured by the two erroneously issued policies that remained in force in August 2005. The owner of the policy insuring the Louisiana greenhouses submitted a claim to Axis for $618,442; the owner of the other policy, the Sweet Bay Condo Association of Pass Christian, Mississippi, submitted a claim for $687,587. Axis paid both claims and then sought to recover the amounts paid from RODCO, asserting that RODCO had "breached the terms of the [Binding Authority] Agreement and/or negligently placed the risk[s] outside the scope of its authority."

RODCO submitted Axis's claims to Arch for payment under a "Proslip Agents and Brokers Professional Liability Insurance Policy" that Arch had issued to RODCO. Under the terms of the policy, Arch agreed to pay claims resulting from RODCO's negligence in "rendering or failing to render professional services":

> We will pay on behalf of the insured damages which the insured becomes legally obligated to pay because of a claim first made against the insured for a negligent act, error or omission committed by the insured in the rendering or failing to render professional services . . . .

(Emphasis in original). The policy defined "professional services" as follows:

> Professional services means the operation, management and work performed by you or on your behalf in the conduct of the business named in the Declarations:
>
> a.   As a duly licensed:
>
>    (1) Insurance agent
>    (2) Insurance broker
>    (3) Insurance solicitor;
>    (4) Surplus line or excess lines broker;
>    (5) Reinsurance intermediary;
>    (6) General insurance agent; or
>    (7) Managing general agent;
>
> b.   and when engaged in the following insurance related activities:
>    ***
>    (6) Placement and sales of insurance products . . . .

(Emphasis in original). The policy also, however, contained two exclusions relating to contractual liability, among others:

> The insurance does not apply to any claim based upon, arising out of, or in any way involving:
>    ***
> l.   Any contractual liability.
>
>    ***

q.   Any actual or alleged breach of any contract, warranty, guarantee, or promise unless liability would have attached to the insured even in the absence of such contract, warranty, guarantee, or promise . . . .

(Emphasis in original).  Relying on these exclusions, Arch rejected RODCO's claims, asserting that they arose from RODCO's breach of the Binding Authority Agreement between RODCO and Axis.

RODCO filed a declaratory judgment action against Arch seeking a determination that its professional liability insurance policy covered Axis's claims.  The parties filed cross-motions for summary judgment, and the district court ruled in favor of Arch, finding that the terms of the policy excluded coverage for Axis's claims against RODCO:

> The contractual liability exclusion located at subpart (q) of Arch's policy is broadly worded to exclude coverage for a claim "based on, arising out of, or in any way involving" a breach of contract.  AXIS's claim against RODCO unarguably arises out of or involves a breach of contract.  RODCO became liable to AXIS solely because the contract that governed their business relationship expressly precluded the very actions that RODCO took.  But for the terms of the Binding Authority Agreement, RODCO's actions would not have been negligent or in error.  RODCO's acts were not negligent or erroneous in the abstract because if the Binding Authority Agreement had allowed RODCO to place the two policies then no party would have incurred damages as a result of RODCO's conduct.

RODCO filed a motion for new trial, which is "properly considered a . . . Fed. R. Civ. P. 59(e) motion for reconsideration."  Little v. Keirsey, No. 94-50931, 1995 WL 625429, at *1 n.2 (5th Cir. Oct. 6, 1995).  The court denied the motion "for the reasons previously assigned" in its order granting Arch's motion for summary judgment.  RODCO timely appealed.

## II. Standard of Review

We review de novo a district court's grant of summary judgment.  Hall v. Gillman Inc., 81 F.3d 35, 36 (5th Cir. 1996) (citing Neff v. Am. Dairy Queen Corp., 58 F.3d 1063, 1065 (5th Cir. 1995)).  Summary judgment is proper when

"the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

## III. Discussion

Although "any doubt or ambiguity as to the meaning of a provision in an insurance policy" must be resolved in favor of the insured, Borden, Inc. v. Howard Trucking Co., 454 So. 2d 1081, 1086 (La. 1983), insurance policies are "subject to the general rules of contract interpretation." Broadmoor Anderson v. Nat'l Union Fire Ins. Co., 912 So. 2d 400, 404 (La. Ct. App. 2005). Thus, "[t]he judicial responsibility in interpreting insurance contracts is to determine the parties' common intent . . . as reflected by the words in the policy." Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 630 So. 2d 759, 763 (La. 1994). Consistent with this responsibility, the district court in the present case found that the "contractual liability exclusion located at subpart (q) of Arch's policy" means what it says: the policy does not cover claims "based upon, arising out of, or in any way involving" a breach of contract.

Framing its first issue on appeal as "[w]hether the contractual liability applies absent an assumption by RODCO of the liability of a third party," RODCO argues that "the 'contractual liability' exclusion is inapplicable and does not bar coverage under the Arch professional liability policy." In support of this argument, RODCO cites Broadmoor Anderson v. National Union Fire Insurance Co. for the proposition that under a "reasonable interpretation," contract liability exclusions apply only to a "specific assumption by the insured of liability that solely results from the negligence or contractual breach of a third party." 912 So. 2d at 407. Likewise, RODCO relies on Estate of Patout v. City of New Iberia, in which the court explained that the purpose of an exclusion at issue in that case was to "eliminate the insurer's liability when the insured has assumed liability." 849 So. 2d 535, 541 n.2 (La. Ct. App. 2002).

From these authorities, RODCO concludes that because it "did not assume liability in the Binding Authority Agreement for the errors RODCO made in placing the [insurance policies at issue] that it would not otherwise have had for its own negligence, the contract exclusion liability is inapplicable." Broadmoor and Patout, however, provide no support for this conclusion. The contractual liability exclusion at issue in Broadmoor stated that "when 'the insured is obligated to pay damages by reason of the assumption of liability in a contract,' coverage is excluded under the policy." 912 So. 2d at 406. Similarly, the exclusion discussed in Patout provided that "[t]his policy does not apply . . . to liability assumed by the Insured under any contract or agreement except an incidental contract." 849 So. 2d at 541. The meaning of these and similar "assumed liability" provisions has no bearing on the proper interpretation of the far broader exclusion provision in the policy Arch issued to RODCO.

RODCO also argues that the district court erred in granting summary judgment for Arch because "RODCO's actions give rise to an action in contract and in tort and therefore survive the 'breach of contract' exception." RODCO's framing of the issue—"[w]hether a negligent act by RODCO . . . which may also constitute a breach of contract, gives rise to an action in tort"—misses the mark. The relevant question is not whether RODCO's actions give rise to tort claims in addition to claims for breach of contract, though its action may support tort claims given the "long-standing rule that 'when a party has been damaged by the conduct of another arising out a contractual relationship, the former may have two remedies, a suit in contract, or an action in tort.'" Corbello v. Iowa Prod., 850 So. 2d 686, 708 (La. 2003) (quoting Fed. Ins. Co. v. Ins. Co. of N. Am., 263 So. 2d 871, 872 (La. 1972)). Instead, the relevant question is whether RODCO's insurance policy excludes coverage for claims "based upon, arising out of, or in any way involving" RODCO's breach of the Binding Authority Agreement.

Cute'-Togs of New Orleans, Inc. v. Louisiana Health Service & Indemnity Co., 386 So. 2d 87 (La. 1980), a case neither party cites, compels the conclusion

6

that RODCO's policy does exclude coverage for such claims. In that case, Blue Cross agreed to insure Cute'-Togs' subscribing employees under a group health insurance policy. Id. at 88. One of the company's employees quit after he discovered upon his wife's admission to the hospital that Blue Cross had failed to process his application for insurance under the policy. Id. Cute'-Togs sued Blue Cross, alleging that its negligence in failing to process the application caused a loss of production resulting from the employee's departure. Id.

Blue Cross filed a third-party demand against its liability insurer, Aetna, asserting that Aetna had a duty to defend the suit. Id. Aetna moved successfully for summary judgment in the trial court on the ground that Blue Cross's policy provided no coverage for Cute'-Togs' claim. Id. The court of appeals reversed, finding that "assuming all of the allegations of fact in Cute'-Togs' petition [were] true, negligent acts constituting an occurrence did take place and damage to property resulted, and that on the occurrence of these two events, Aetna had a duty to defend." Id.

The Louisiana Supreme Court reversed, holding that the following exclusion in Blue Cross's policy with Aetna barred its claim: "This insurance does not apply . . . to loss of use of tangible property which has not been physically injured or destroyed resulting from . . . a delay in or lack of performance of the named insured of any contract or agreement . . . ." Id. In support of its holding, the supreme court explicitly rejected the lower court's reasoning that Aetna had a duty to defend Blue Cross because the policy did not "specifically exclude negligence as a contractual ground of non-defense":

> This reasoning overlooks the source of Cute'-Togs' alleged damages. According to the allegations of plaintiff's petition, the duty/right relationship between the parties arose out of the insurance agreement between them, and the allegations of plaintiff's petition allege no more than a negligent failure of that duty.

7

Id. at 89. Because Cute'-Togs' petition alleged "no more than a negligent failure of that duty," the supreme court held, the unambiguous exclusion relied upon by Aetna was applicable. Id.

The same is true here. As RODCO explains in its own brief, the "[Binding Authority Agreement] established the agency relationship [between RODCO and Axis] and outlined the duties and limitations of the agency authority created by said agreement. AXIS'[s] claims arise out of the alleged negligent manner in which the agency duties were performed by RODCO." Cute'-Togs forecloses any argument that RODCO's policy provides coverage for such claims.

Finally, RODCO argues that we should reject the district court's interpretation of the insurance policy because it "produces absurd results as it would cause the operation of an exclusion to hinge upon the identity of the person asserting the professional liability claims against the insured." This argument is without merit. As the district court noted in its order, the contractual liability exclusion thwarting RODCO—like all policy exclusions—creates a "potential gap," but it leaves intact substantial coverage for "negligence . . . in the rendering or failure to render professional services." The district court correctly determined that this is not a result "so absurd as to allow the Court to rewrite a policy that is not ambiguous on its face." See Succession of Fannaly v. Lafayette Ins. Co., 805 So. 2d 1134, 1137 (La. 2002) ("When the words of an insurance contract are clear and explicit and lead to no absurd consequences, courts must enforce the contract as written.")

## IV. Conclusion

For the reasons set forth above, the district court did not err in granting summary judgment to Arch, or in denying RODCO's motion for new trial. We therefore AFFIRM the district court's judgment.